**CLEAR CHANNEL BROADCASTING,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (Marie PERRY, Widow of Dwayne Perry, Decedent), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.

Decided Dec. 7, 2007.

---

John Patrick Meyers, Philadelphia, for petitioner.

Brian R. Steiner, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Clear Channel Broadcasting (Employer) seeks review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting a fatal claim petition filed by Marie Perry (Claimant), the widow of Dwayne Perry (Decedent). Employer argues that the Board erred in concluding that Decedent's death occurred in the course and scope of his employment when the evidence fails to support the application of any of the exceptions to the "coming and going rule" and that the Board erred in affirming the WCJ when testimony of Claimant's expert witness is equivocal and is not supported by evidence and when the WCJ's decision is not a reasoned one.

In a fatal claim petition filed August 22, 2003, Claimant alleged that Decedent, who worked as Employer's Director of Sales, died as result of blunt trauma to his chest suffered from an automobile accident that occurred on Route 55 in Gloucester County, New Jersey on September 28, 2002 at approximately 5:05 a.m. Claimant, who also worked for Employer as Director of Marketing, testified that Decedent was responsible for marketing three radio stations owned by Employer in Philadelphia, including WDAS "Power 99" AM/FM. Decedent managed sales staff, went on sales calls, interacted with clients and visited Employer-sponsored events at various nightclubs to make sure that no problems existed with Employer's clients at the events. Decedent had no set working hours, and Employer provided Decedent with a 1999 BMW 740 for use twenty-four hours per day, which he drove home after work. On the night of September 27, 2002, he visited Palmer Night Club (Palmer) located at Spring Garden and Callowhill Streets in Philadelphia, where a live broadcast sponsored by Power 99 FM and hosted by an on-air personality, "Golden Girl" Lisa Natson, was taking place. From Palmer, Decedent would travel down Delaware Avenue, cross the Walt Whitman Bridge and take Route 55 to go to his home in Glassboro, New Jersey.

Claimant's witnesses included Tracie Coleman, Employer's Sales Executive and Decedent's subordinate; Natson; and Christopher Michael Phipps, an on-air personality. On September 27, 2002 at 8:00 p.m., Decedent went to a restaurant with Coleman and several other coworkers; thereafter, Decedent and Coleman visited two more restaurants and met with clients and coworkers. At 12:30 a.m. the next morning, Decedent walked Coleman to her car and then went to Palmer. Earlier Coleman saw Decedent consume a beer at one of the restaurants, and he did not appear to be impaired or inebriated. Natson worked at Palmer from 10:00 p.m. on September 27 to 2:00 a.m. the next morning, and she observed Decedent arriving at Palmer between 12:45 a.m. and 1:00 a.m. He did not appear to be impaired or intoxicated when he left at 3:45 a.m. that morning. Phipps saw Decedent driving his vehicle on Delaware Avenue at 4:00 a.m., and he had a conversation with Decedent when their cars were stopped at a traffic light. Decedent did not appear to be impaired.

Employer presented testimony from its Market Manager and Regional Vice–President, Richard Lewis. He testified in his deposition that Decedent was responsible for motivating sales staff, managing sales managers and going on sales calls. In June 2002 Employer's Senior Vice–Presi-

dent, Jim Shea, sent an e-mail to all sales managers and directors including Decedent, stating: "[Y]ou must lead the charge yourself. Be out of the office making sales calls all the time, especially closing calls. Know and visit all your top advertisers. Get your MM out their [sic] doing the same thing." Supplemental Reproduced Record (S.R.) at 105a–106a. Decedent was required to travel to some degree to visit advertisers and to make presentations to clients. Lewis stated that Decedent was not instructed to go to Palmer's event, although he agreed that Decedent's major responsibility was to maximize advertising revenues, that the Palmer event was to increase Employer's advertising revenue and that Decedent's visit was within the scope of his job duties.

Employer also presented deposition testimony from Jack W. Snyder, M.D., J.D., Ph.D., an expert in the field of toxicology and pathology. Dr. Snyder reviewed Decedent's death certificate, a medical examiner's report, a laboratory report, a police accident report and a motor vehicle accident diagram. It was Dr. Snyder's understanding that on September 28 at approximately 5:00 a.m. Decedent's car struck the rear end of a 1993 Chevy Blazer and then a concrete pillar and that he was unresponsive at the scene and was taken to a hospital where he was pronounced dead at 8:21 a.m. The medical examiner's report noted that the cause of death was blunt trauma to the chest. The October 15, 2002 toxicological report of Analytic Bio–Chemistries Inc. showed 0.17 grams of ethanol per deciliter of Decedent's blood, 0.22 grams of ethanol per deciliter of urine and 0.17 grams of ethanol per 100 grams of the brain tissue. Dr. Snyder opined that Decedent was mentally and physically impaired and was incapable of operating a vehicle and that the accident would not have occurred but for the presence of alcohol.

Claimant presented the deposition testimony of Kalipatnapu N. Rao, Ph.D., Chief of the Toxicology Lab and a professor of pathology at the University of Pittsburgh Medical Center. He testified that the record did not indicate whether proper procedures were employed in taking blood samples from Decedent, whether his stomach contents and vitreous fluid from the eye were analyzed, what method was used to analyze the blood or whether samples were properly stored or handled during the chain of custody between the September 28, 2002 autopsy and receipt of the samples by the lab on October 3. The record also failed to show the amount of alcohol that Decedent consumed and the time of consumption. Dr. Rao opined that the reported blood-alcohol level did not represent the level of alcohol in Decedent's system at the time of death and could not determine the level of his impairment.

■ The WCJ accepted as credible the testimony of Claimant and her lay witnesses regarding Decedent's activities on the night of September 27, 2002 and the next morning and also accepted as credible the testimony of Dr. Rao. The WCJ found that Decedent's attendance at Palmer's event was part of his responsibilities as Director of Sales and that the accident occurred in the course and scope of his employment on the way home after attending the event. Concluding that Claimant met her burden of proof and that Employer failed to prove that Decedent's death was the result of a violation of law, the WCJ awarded Claimant maximum weekly benefits of $662 from September 28, 2002. The Board concluded on appeal that the evidence supported the WCJ's determinations that Decedent was in the course and scope of his employment at the time of the accident, that an employee may be considered a traveling employee even if the employee has a fixed place of work and that

Decedent was expected to be out of the office as often as possible and was furthering Employer's business at the time of the accident.[1]

■ To establish entitlement to benefits, a claimant must prove an injury "arising in the course of his employment and related thereto...." Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1). An injury sustained on or off the employer's premises while "actually engaged in the furtherance of the business or affairs of the employer" is considered to arise in the course of employment. *Id.* Inasmuch as the Act is remedial in nature and intended to benefit workers, the phrase "actually engaged in the furtherance of the business or affairs of the employer" must be given a liberal construction to effectuate the humanitarian objectives of the Act. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995). Under Section 301(c)(1), compensable injuries do not include "injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury...."[2] Whether an employee was in the course of employment at the time of injury, a case-specific inquiry, is a question of law to be determined based on the WCJ's findings. *U.S. Airways v. Workers' Compensation Appeal Board (Dixon),* 764 A.2d 635 (Pa.Cmwlth.2000).

■ Employer's first argument is that the WCJ erred in determining that Decedent was in the course and scope of his employment at the time of death. It maintains that Decedent's death does not fall within any of the four exceptions to the coming and going rule, under which an injury sustained off the employer's premises is not considered to have occurred in the course of employment. *See Biddle v. Workmen's Compensation Appeal Board (Thomas Mekis & Sons, Inc.),* 539 Pa. 343, 652 A.2d 807 (1995). An injury sustained while going to or coming from work is compensable if any one of the following exceptions exists: (1) the claimant's employment contract includes transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on a special mission for the employer; or (4) special circumstances are such that the claimant was furthering the business of the employer. *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency),* 528 Pa. 279, 597 A.2d 1116 (1991).

Employer asserts that the first exception does not apply as the record fails to show an employment contract providing Decedent with transportation to and from

---

1. The Court's review is limited to determining whether constitutional rights were violated, an error of law was committed, a practice or procedure of the Board was not followed or the findings of fact are not supported by substantial evidence in the record. *Helvetia Coal Co. v. Workers' Compensation Appeal Board (Learn),* 913 A.2d 326 (Pa.Cmwlth.2006).

2. The 1993 amendment to Section 301(c)(1) of the Act excluding an injury sustained while operating an employer-provided vehicle from a compensable injury unless the employee is otherwise in the course of employment at the time of injury did not abrogate the common law employment contract exception to the coming and going rule. *Wachs v. Workers' Compensation Appeal Board (American Office Sys.),* 584 Pa. 478, 884 A.2d 858 (2005). The Court observed in *Wachs* that in determining whether an employee's contract provided for transportation to and from work, a reviewing court must look at the totality of the circumstances; also an employment contract for transportation can be either express or implied, and an oral agreement to provide transportation may be part of an employment contract.

work or Decedent's demand for use of a company car as a condition of his employment. It cites *Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski)*, 768 A.2d 384, 390 (Pa.Cmwlth.2001), *aff'd*, 570 Pa. 60, 807 A.2d 906 (2002), which held that "an employee is not in the course of employment simply by virtue of the fact that he or she is driving an employer-provided vehicle," and *Wachs v. Workers' Compensation Appeal Board (American Office Sys.)*, 584 Pa. 478, 884 A.2d 858 (2005), in which the negotiated employment contract included the decedent's transportation to and from work by a company car.

Lewis admitted that Decedent was provided a vehicle "as part of his employment package" for use twenty-four hours per day without any restrictions. S.R. at 97a. Lewis testified:

> Q. So his usage of the car to go to and from work, to and from this location, to and from promotions, to and from clubs, to and from dinners with advertisers was all well within the course and scope of his employment; is that correct?
>
> A. You are correct.

Lewis' Deposition, p. 32; S.R. 98a. Lewis' testimony supports application of the employment contract exception to the coming and going rule. Where a claimant proves that the injury falls within at least one of the exceptions the claimant is not required to show that the decedent was actually engaged in furtherance of the employer's businesses at the time of injury. *William F. Rittner Co. v. Workmen's Compensation Appeal Board (Rittner)*, 76 Pa. Cmwlth.596, 464 A.2d 675 (1983).

As the Court observed, "one who is employed to travel and who is provided with transportation in order to carry out such duty has a scope of employment that is 'necessarily broader than that of an ordinary employee....'" *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Elec. Co.)*, 79 Pa.Cmwlth.454, 469 A.2d 723, 725 (1984) (quoting *Aluminum Co. of America v. Workmen's Compensation Appeal Board*, 33 Pa.Cmwlth. 33, 380 A.2d 941, 943 (1977)). In *Oakes* the employee, a duty foreman, responded to an emergency in a company car at 9:00 a.m. and then engaged in non-business activities of shopping and stopping at some bars consuming alcohol while waiting for a service call on the radio. He was killed in an automobile accident at 4:00 p.m. on the road home. The Court concluded that he was in the course of his employment, and it reasoned: "[D]ecedent ... was engaged when killed in completing the employer's task on which he had embarked earlier in the day; ... the homeward trip was a necessary part of his employment...." *Id.*, 469 A.2d at 726. Decedent here was in the course and scope of his employment at the time of the accident that occurred one hour after he was seen, by a coworker, on his way home after completing his job duties.

Employer next argues that the blood-alcohol level in the toxicological report represented prima facie evidence of Decedent's violation of law and that Dr. Rao's testimony and his report do not constitute substantial, competent evidence to support the conclusion that Employer failed to prove an affirmative defense that Decedent's death was caused by intoxication. It argues that Dr. Rao's testimony regarding the unreliability of the blood analysis is equivocal, internally inconsistent, speculative and lacking in foundation, support or corroboration.

Section 301(a) of the Act, 77 P.S. § 431, provides in relevant part:

> [N]o compensation shall be paid when the injury or death ... is caused by the employe's violation of law, including, but not limited to, the illegal use of drugs, but the burden of proof of such fact shall

be upon the employer.... In cases where the injury or death is caused by intoxication, no compensation shall be paid *if the injury or death would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be upon the employer.* (Emphasis added.)

An employer or insurer asserting an employee's intoxication as an affirmative defense must establish that the intoxication was "the cause in fact," as opposed to the proximate cause or substantial factor, of the injury, and the WCJ makes this determination. *Mahon v. Workers' Compensation Appeal Board (Expert Window Cleaning)*, 835 A.2d 420, 429 (Pa.Cmwlth. 2003).

The WCJ found credible Dr. Rao's opinion that the blood-alcohol level stated in the toxicological report was unreliable and could not be relied on to determine the level of Decedent's impairment at the time of the accident. Dr. Rao explained that two samples should be obtained from different parts of the body in any autopsy involving trauma and that Decedent's stomach contents and vitreous fluid from the eye should have been analyzed. The record did not indicate how the blood was drawn from Decedent and whether a gas chromatography or an enzymatic method was used to analyze the blood. The enzymatic method could have falsely elevated a blood-alcohol level.

Dr. Rao also noted that Decedent's body would be still metabolizing and absorbing alcohol if he was alive for one or two hours after the accident and that if Decedent died instantaneously from the accident, he would have had to consume 12 to 13 drinks in a very short period of time to reach the blood-alcohol level of 0.17. Dr. Rao questioned as well the sanctity of the samples taken for the blood-alcohol analysis. The record failed to demonstrate where the samples were between the September 28 autopsy and October 3 when the lab received them. Dr. Snyder admitted that the samples could have been degraded or compromised if they were not handled properly, and he was unaware whether Decedent's stomach fluid was analyzed, what method was used to analyze the blood samples, how long Decedent was alive after the accident or what his condition was prior to 8:21 a.m. when he was pronounced dead.

Credibility determinations and the evaluation of evidentiary weight are within the province of the WCJ as the factfinder, and the WCJ may accept or reject the testimony of any witness, including medical testimony, in whole or in part. *Canavan v. Workers' Compensation Appeal Board (B & D Mining Co.)*, 769 A.2d 1250 (Pa.Cmwlth.2001). Because the WCJ rejected the testimony of Employer's expert witness, Employer failed to prove that the accident was caused by Decedent's violation of law, *i.e.*, that his intoxication was the cause in fact of his death. Employer's attack on Dr. Rao's testimony is "nothing more than a request for this Court to make credibility determinations and to reweigh the evidence in favor of Employer." *City of Philadelphia v. Workers' Compensation Appeal Board (Cronin)*, 706 A.2d 377, 380 (Pa.Cmwlth.1998).

Finally, Employer argues that the WCJ failed to comply with Section 422(a) of the Act, 77 P.S. § 834, requiring him to render a reasoned decision. Employer contends that the WCJ did not articulate and explain his credibility determinations in favor of Dr. Rao and his finding that the testimony of Claimant's lay witnesses regarding their observation of Decedent was consistent when they saw him at different times. In addition, the WCJ failed to indicate which exception to the coming and going rule applied. Citing *Lewis v. Work-*

*ers' Compensation Appeal Board (Disposable Prods.)*, 853 A.2d 424 (Pa.Cmwlth. 2004), in its reply brief, Employer repeats the principle that the purpose of a reasoned decision is to spare the reviewing court of having to imagine why the WCJ believed one witness' testimony over the testimony of another witness.

■■■■ A WCJ renders a reasoned decision if it does not require further elucidation and provides a basis for meaningful appellate review. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003). If the WCJ did not actually observe the witnesses' demeanor, the WCJ must provide some articulation of the objective basis for the credibility determinations. *Id.* In his decision, the WCJ summarized each witness' testimony in detail and adequately explained his credibility determinations.

The WCJ determined that Dr. Rao's deposition testimony is supported by the testimony of Claimant's fact witnesses "regarding their observations of the decedent on the night of September 28, 2002 ... [and] by his explanation of the unreliability of the blood alcohol content to determine and make a finding within a reasonable degree of certainty that the decedent's motor vehicle accident was caused by any alcohol intoxication."[3] WCJ's Decision, Findings of Fact No. 11. Employer presented no evidence to dispute Claimant's fact witnesses' testimony regarding Decedent's activities at the time. The WCJ credited the fact witnesses' testimony and found it to be consistent as to Decedent's activities on September 28 and to be consistent with the fact that Decedent was in the course and scope of his employment when the accident occurred on his way home from a work function.

While the WCJ did not refer to a specific exception to the coming and going rule, he did find that Decedent "was given a company car to make sales calls, which he had available to him 24 hours a day" and that he "was given a company car as part of his employment package and that he was permitted and expected [to] drive the car home and then leave to go to various calls and to the station." Findings of Fact Nos. 3(b), 7(b). These findings unequivocally support application of the employment contract exception to the rule. *See Peterson.* From its review, the Court concludes that the WCJ rendered a reasoned decision because it does not require further elucidation and provides a basis for meaningful appellate review. Discerning no error by the WCJ or the Board, the Court accordingly affirms.

### ORDER

AND NOW, this 7th day of December, 2007, the Court affirms the order of the Workers' Compensation Appeal Board.

---

3. The WCJ's reference to the night of "September 28" is an apparent typographical error. It is undisputed that the accident occurred in the morning of September 28.