# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Don Frees,                               :
                     Petitioner          :
                                         :
          v.                             :   No. 1714 C.D. 2014
                                         :   SUBMITTED:  February 27, 2015
Workers' Compensation Appeal             :
Board (County of Berks),                 :
                     Respondent          :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                          **FILED:  August 25, 2015**


          Don Frees (Claimant) petitions for review of the order of the Workers'
Compensation Appeal Board (Board) that affirmed the decision of the Workers'
Compensation Judge (WCJ) (1) granting Claimant's review petition in part, (2)
denying his reinstatement petition and penalty petition, and (3) granting the
termination petition filed by the County of Berks (Employer) for his shoulder
injury.  Claimant challenges the WCJ's denial of the petition to reinstate benefits
from October 18, 2011 through August 30, 2012.  He argues that the WCJ placed
upon him the incorrect burden of establishing entitlement to reinstatement and
improperly relied on the opinion of Employer's medical expert which was based on
the incorrect assumptions of his job's physical requirements.  We affirm.

          While employed as a juvenile correctional counselor at Employer's
Youth Detention Center, Claimant sustained a work-related injury on January 17,

2010, while breaking up a fight between two juvenile residents. Employer issued a notice of temporary compensation payable describing Claimant's injury as "right shoulder, thoracic strain." Reproduced Record (R.R.) at 1a. Employer issued a notification of suspension of Claimant's benefits on October 20, 2010 based on his return to work without a loss of earnings.

Claimant stopped working on October 18, 2011 and filed a petition for review and a petition for reinstatement. He alleged that the description of the work injury was incorrect and that his condition worsened causing a decreased earning power. Employer filed a termination petition, alleging that Dr. David Lloyd Rubenstein, a board-certified orthopedic surgeon, performed an independent medical examination (IME) on May 4, 2012 and opined that Claimant fully recovered from the work injury. Claimant then filed a penalty petition, alleging that Employer unilaterally determined that as of September 30, 2011, the medical treatment for symptoms in his neck and arm was no longer related to a cervical spine injury acknowledged by the IME, and that Employer failed to pay medical bills in violation of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708. The WCJ consolidated these petitions.

Claimant testified that he sustained injuries to the neck, left arm and middle of his back on January 17, 2010, when he fell to the ground and landed on the left elbow while breaking up a fight. He was treated with medication and physical therapy after the injury. In July 2010, he underwent cervical discectomy performed by Dr. Stephen Banco. His conditions improved after the surgery, and Dr. Banco released him to return to work without restriction. On October 20, 2010, he returned to a control-room operator position through the union bidding

2

process. The new position was easier to perform than the pre-injury juvenile correctional counselor position. In August 2011, Claimant again experienced numbness in his left hand, constant headaches and neck pain. Dr. Banco then referred him to Dr. Steven Evans, who is board-certified in emergency medicine. Claimant stopped working on October 18, 2011 due to the increased pain. On August 30, 2012, he returned to work for the Immigration Custom Enforcement (ICE), which administers a residential program for undocumented families, as a full-time shelter care counselor through the union bidding process. The new position was less stressful and did not require him to pat down or strip-search detainees.

Claimant presented the deposition testimony of Dr. Evans who first examined him on April 5, 2010. Claimant complained of headaches and increased pain in the back, upper thoracic area and cervical spine radiating into the right upper extremity. Dr. Evans treated Claimant with pain management, including epidural steroid injections at C6-7, which did not provide any relief to him. MRI films dated April 14, 2010 revealed evidence of a significant disc disease at C6-7. Dr. Evans referred Claimant back to Dr. Banco, who performed the anterior discectomy at C6-7 in July 2010 and found that Claimant had a degenerative disc disease and arthritis.

On July 13, 2011, Dr. Banco examined Claimant and found that he had a complete resolution of the symptoms. Claimant returned to Dr. Banco on September 30, complaining of pain in the neck and left arm, but Dr. Banco's examination was normal. On October 12, Claimant complained of constant occipital pain and headaches, but Dr. Banco's examination was unremarkable. A new MRI showed that there were mild, left-sided neural foraminal impingements

3

at C4-5 with minor disc bulging at C3-4 and no evidence of disc herniation.

When Dr. Evans saw him on February 10, 2012, Claimant complained of a recurrence of pain, which was not precipitated by any injury or event. He had burning and pulsating left-sided neck pain radiating to the left upper trapezius area and around his left shoulder blade. An EMG revealed that Claimant had carpal tunnel syndrome. On March 23, 2012, Dr. Evans released Claimant to modified-duty work. Dr. Evans opined that Claimant suffered from a cervical radiculopathy at C6-7 and an aggravation of the degenerative disc disease as a result of the January 17, 2010 work injury and the subsequent surgery. Dr. Evans further opined that although Claimant was capable of working as a control-room operator, he would not release Claimant to that position because Claimant would be required to restrain detainees.

Employer presented the deposition testimony of Dr. Amir Fayyazi who is board-certified in orthopedic surgery with a subspecialty in spine surgery. At the time of his examination on November 23, 2011, Claimant complained of neck pain, elbow pain and numbness, and tingling in the left pinky. Claimant had a slightly decreased motion of the neck, had discomfort with palpation of the cervical spine at C7 and T1, and a decreased range of motion of the lumbar. Claimant's shoulders and right elbow were normal. The examination of Claimant's left elbow revealed medial epicondylitis and a positive Tinel's sign. Claimant did not have radiculopathy. Dr. Fayyazi opined that Claimant's January 2010 work injury included cervical strain and sprain and minor lumbar sprain and strain, and that he had recovered from the injury. Dr. Fayyazi further opined that Claimant's preexisting cervical spine condition was aggravated by the work injury and that he had not recovered from the aggravation but had reached maximum medical

4

improvement and could work in a job in which he would be able to change his positions.

Dr. Rubenstein opined that Claimant had fully recovered from the work-related right shoulder strain. The former deputy director of the Youth Detention Center and the current executive director of the Berks County Residential Center, LaRae Edwards, described the control room where Claimant worked from October 2010 to October 18, 2011 as a small locked room where the security system of the building was run. Edwards testified that although Claimant's regular duty as a control-room operator would require him to restrain detainees, he did not actually restrain any detainee while working in that position on the third shift. She would have accommodated Claimant's restrictions if she was aware of them. After Claimant returned to a full-time shelter care counselor position with ICE, Employer accommodated his restrictions and did not require him to restrain detainees.

The WCJ accepted as credible the testimony of Dr. Rubenstein, Dr. Fayyazi and Edwards. The WCJ found that Dr. Fayyazi's testimony was more credible than Dr. Evans's conflicting testimony and consistent with the medical records. The WCJ accepted Claimant's testimony regarding his left-sided complaints but rejected his testimony that they were work-related or that he was disabled from October 2011 through August 2012.

The WCJ found that Claimant's work injury consisted of cervical sprain/strain, lumbar sprain/strain and an aggravation of the preexisting degenerative conditions at C6-7, that he was not disabled from October 2011 through August 2012 due to the 2010 work injury, and that he fully recovered from his work-related right shoulder injury. The WCJ concluded that Claimant failed to

5

establish Employer's violation of the Act. The WCJ noted that there was no evidence that Employer denied medical bills or that any denied medical bills were for treatment of the work injury. The WCJ granted Claimant's review petition in part and included cervical and lumbar strain/sprain and an aggravation of preexisting degenerative conditions at C6-7 in the description of the work injury. The WCJ denied his reinstatement petition and penalty petition and granted Employer's termination petition relating to the shoulder injury. The Board affirmed the WCJ's decision. Claimant appealed, challenging the WCJ's denial of the reinstatement petition.

The WCJ applied the correct standards for reinstating suspended benefits. In *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548 (Pa. 2010), our Supreme Court revisited the issue of the appropriate allocation of the relevant burdens of proof where claimants seek reinstatement of suspended benefits pursuant to Section 413(a) of the Act, 77 P.S. § 772. The Court modified the prior standards for reinstatement set forth in *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Co.)*, 760 A.2d 369 (Pa. 2000), and *Pieper v. Ametek-Thermox Instruments Division,* 584 A.2d 301 (Pa. 1990). The *Bufford* Court held:

> A claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim. The claimant need not re-prove that the disability resulted from a work-related injury during his or her original employment. Once the claimant meets this burden, the burden then shifts to the party opposing the reinstatement petition. In order to prevail, the opposing party must show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury. This burden may be met by

6

> showing that the claimant's loss of earnings is, in fact, caused by the claimant's bad faith rejection of available work within the relevant required medical restrictions or by some circumstance barring receipt of benefits that is specifically described under provisions of the Act or in this Court's decisional law.

*Bufford*, 2 A.3d at 558.

Claimant failed to establish that his earning power was once again adversely affected by his disability during the period from October 18, 2011 to August 30, 2012. The testimony accepted by the WCJ as credible established that Claimant returned to the full-time control-room operator position without restrictions in October 2010 and worked until October 18, 2011. Claimant's Deposition at 15; R.R. at 238a. Dr. Banco had Claimant stop working "not on account of physical findings but on account of subjective complaints of pain made by [Claimant][.]" Dr. Evans's Deposition at 67; R.R. at 105a. In March 2012, Dr. Evans released Claimant to return to work restricting him from restraining detainees. Dr. Evans testified that "[i]f the control room job did not expose him at all to the risks of restrain or altercation with … clients - - then he could that job." *Id.* at 77; R.R. at 115a. Edwards testified that Claimant was not required to restrain detainees after he returned to work after the work injury and that she would have accommodated Claimant's restrictions. Dr. Rubenstein opined that Claimant had fully recovered from the right shoulder injury. Dr. Fayyazi opined that Claimant had reached the maximum medical improvement for the aggravation of the preexisting cervical spine condition and could work in a job in which he would be able to change his positions.

In a workers' compensation case, credibility determinations and evaluation of evidentiary weight are within the exclusive province of the WCJ. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150,

7

1156 (Pa. Cmwlth. 2007). Our appellate role is not to reweigh the evidence or review the credibility of the witness, but to simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). In addition, we must review the evidence in a light most favorable to the party who prevailed before the WCJ. *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). It is irrelevant whether the record contains evidence supporting findings other than those made by the WCJ. *Id*. at 1238.

Here, the WCJ's finding that Claimant's loss of earnings from October 18, 2011 to August 30, 2012 was not caused by the disability arising from the work injury is supported by the testimony of the witnesses accepted by the WCJ as credible. Because the WCJ's finding was based on her credibility determinations, it may not be disturbed on appeal. *Leca v. Workers' Comp. Appeal Bd. (Phila. Sch. Dist.),* 39 A.3d 631, 634 n.2 (Pa. Cmwlth. 2012).

Claimant argues that the WCJ improperly relied on Dr. Fayyazi's opinion which was based on his incorrect assumptions of the physical requirements of the control-room operator job. *See Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14 (Pa. Cmwlth. 2008) (holding that if an expert's opinion is dependent upon information that is inaccurate or lacks support in the record, it is deemed incompetent). In support, Claimant relies on Dr. Evans's testimony that Claimant could not work in the control-room operator position because it involved patting and stripping down juvenile detainees.

Contrary to Claimant's argument, Dr. Fayyazi did not base his opinion on his misunderstanding of the physical requirements of the control-room operator

8

position. Dr. Fayyazi testified that his understanding of the control room "would be it's a sit-down job with a bunch of buttons, cameras, a glass door" and that "there would be no restrictions on him getting up and moving around." Dr. Fayyazi's Deposition at 27-28; R.R. at 146a-47a. Dr. Fayyazi's description of the control room was consistent with Edwards' description that it was a small locked room where the security system of the building was run. Claimant admitted that he was not required to restrain detainees after he returned to the control-room position. Dr. Evans also agreed that Claimant could work in the control room if he was not required to restrain the detainees.

Accordingly, the Board's order is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Don Frees,                                             :
                          Petitioner                   :
                                                       :
              v.                                       :    No. 1714 C.D. 2014
                                                       :
Workers' Compensation Appeal                           :
Board (County of Berks),                               :
                          Respondent                   :

## **O R D E R**

AND NOW, this 25th day of August, 2015, the order of the Workers'
Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge