# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harley Davidson,                          :
                     Petitioner           :
                                          :
          v.                              :     No. 674 C.D. 2016
                                          :     SUBMITTED: October 28, 2016
Workers' Compensation Appeal              :
Board (Childs),                           :
                     Respondent           :


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER                          FILED: March 7, 2017


          Employer, Harley Davidson, petitions for review of an order of the

Workers' Compensation Appeal Board (Board) that affirmed the decision of the

Workers' Compensation Judge (WCJ) (1) denying Employer's termination

petition; and (2) determining on remand that, in addition to exertional compartment

syndrome of the right forearm, the work injury of Claimant, David Childs, should

be expanded to include the same description for the left forearm. We affirm.[1]

---

[1] In July 2016, this Court denied Employer's petition for supersedeas for failure to meet the criteria set forth in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805, 808 (Pa. 1983). In October 2016, we precluded Claimant from filing a brief or participating in oral argument, if scheduled.

From 1997 to 2010, Claimant worked full-time as an assembler at Employer's motorcycle factory where his job required him to use his hands all day in order to operate battery-operated impact guns and ratchets as well as D.C. guns hooked up to a torque box. WCJ's May 13, 2013, Decision, Finding of Fact (F.F.) No. 24. When he was approximately forty-one years old, Claimant sustained a work-related "bilateral hands strain" and began receiving benefits pursuant to a medical-only Notice of Temporary Compensation Payable (NTCP).[2] *Id*., F.F. No. 1. Subsequently, Employer issued a Notice of Compensation Payable (NCP) for a right-wrist strain pursuant to which it paid Claimant weekly compensation benefits in the amount of $605.16 based on an average weekly wage of $907.74.[3] *Id*. Based on the NTCP, the NCP, and Employer's written argument, the WCJ found that, "it is clear that the Employer accepted a June 21, 2010 work injury in the nature of bilateral hand and wrist strains." *Id*.

In October 2011, Employer filed a termination petition alleging that Claimant had fully recovered as of October 4th. Based upon a specific job offer, it also filed a petition to modify/suspend compensation benefits as of January 2, 2012. Subsequently, Claimant filed a medical review petition "seeking to include any and all diagnoses that have been provided to [him] by his treating doctors relative to the pain, symptoms and treatment he has received for his hands, wrist and forearms, including the diagnosis of compartment syndrome." April 5, 2013, Medical Review Petition, Certified Record.

The WCJ denied Employer's petitions, rejecting the medical opinion of Employer's independent medical examiner Sanjiv Naidu, M.D., that Claimant

[2] August 9, 2010, NTCP at 1; Reproduced Record (R.R.) at 5a.
[3] July 1, 2011, NCP at 1; R.R. at 6a.

2

was fully recovered, that he should be released to return to work,[4] and that his work injuries were the result of his karate activities. WCJ's May 13, 2013, Decision, F.F. No. 25. Instead, the WCJ accepted the testimony of treating hand surgeon S. Shar Hashemi, M.D., treating doctor Asit P. Upadhyay, D.O., Claimant, and karate instructor Roger Engle. Accordingly, the WCJ expanded the injury description, acknowledging the bilateral pain throughout Claimant's hands and forearms[5] and concluding that he met his burden of proving that his work injury included right forearm compartment syndrome and possible left forearm compartment syndrome. *Id*. at 6.

On appeal, the Board determined that the WCJ's finding that Claimant had "possible left forearm compartment syndrome" was unclear such that a remand was warranted for the WCJ to determine based on the record whether Claimant had left forearm compartment syndrome. Board's May 12, 2015, Decision at 8. The Board affirmed the WCJ's May 2013 decision and order in all other respects, rejecting Employer's contention that Dr. Hashemi's testimony was rendered incompetent by virtue of the testimony of Claimant and Mr. Engle regarding the nature of Claimant's practice of karate. *Id*. at 6.

On remand, the WCJ (1) reiterated his acceptance of the medical opinion of Dr. Hashemi that Claimant's eleven-year micro-repetitive work and torqueing at Employer's motorcycle factory caused compartment syndrome; and (2) confirmed his initial determination that Claimant's work injury included exertional compartment syndrome of the left forearm. The Board affirmed the

---

[4] The WCJ concluded that Dr. Naidu's opinion that Claimant should be released to return to work was inconsistent with valid functional capacity evaluation results.

[5] *See* WCJ's May 13, 2013, Decision, F.F. Nos. 24, 25, and 28.

3

WCJ's August 2015 decision and rejected Employer's contention that Dr. Hashemi's testimony was equivocal due to his use of words "possible" and "believe" in rendering his diagnosis.[6] Employer's timely petition for review to this Court followed, wherein Employer is pursuing only its argument that Dr. Hashemi's testimony is incompetent because he based his opinion on inaccurate assumptions regarding Claimant's practice of karate that are contrary to the credited testimony of Claimant and Mr. Engle.

As the party seeking to amend the injury description, Claimant was required to demonstrate that the injury accepted by Employer in the NCP does not reflect all of the work injuries sustained. *Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 872 A.2d 159, 166-67 (Pa. 2005). To terminate Claimant's benefits, Employer had the burden of establishing either that his disability had ceased or that his remaining disability was unrelated to the work injury. *Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 865 A.2d 991, 995 (Pa. Cmwlth. 2005). Where medical testimony is required relating to causation, it must be unequivocal to support an award. *Haney v. Workmen's Comp. Appeal Bd. (Patterson-Kelley Co.)*, 442 A.2d 1223, 1225 (Pa. Cmwlth. 1982). To determine whether medical testimony is equivocal, it must be reviewed and taken as a whole. *Lewis v. Commonwealth*, 498 A.2d 800, 803 (Pa. 1985). A medical witness's testimony is unequivocal if the witness testified, after providing a foundation, that he or she believes or thinks facts exist. *ARMCO, Inc. v. Workmen's Comp. Appeal Bd. (Carrodus)*, 590 A.2d 827, 829 (Pa. Cmwlth. 1991). Further, such evidence is unequivocal as long as the witness does not recant the opinion first expressed.

---

[6] Because the issue of Dr. Hashemi's language is not raised on appeal to this Court, we will not address it.

4

*Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). Whether medical testimony is unequivocal and competent to support the WCJ's findings is a question of law subject to our plenary review. *Id.*

In the present case, Employer maintains that the WCJ erred in relying on Dr. Hashemi's testimony to support a finding that Claimant's work-related injury included exertional compartment syndrome of the left forearm because the doctor's testimony is based on an assumption that Claimant's practice of karate is not physically intensive which is contrary to the credited testimony of Claimant and Mr. Engle. In support, Employer references their testimony as to the physical intensity of karate, *inter alia*, what is required to achieve a black belt and to participate in karate tournaments and classes. We turn first to Dr. Hashemi's testimony for purposes of ascertaining the foundation for his opinion.

Dr. Hashemi opined that, "it doesn't seem to me that the degree of activity from [Claimant's] karate has much to do with his current complaints of chronic exertional compartment syndrome." January 11, 2013, Deposition of Dr. Hashemi, Notes of Testimony (N.T.) at 30; Reproduced Record (R.R.) at 130a. In support, the doctor referenced Claimant's personal conversation with him "that the scope of the karate that [Claimant] was performing was more of the stretching exercises and just the physical fitness component." *Id.* at 34; R.R. at 134a. In addition, the doctor also reviewed a note from Mr. Engle regarding the nature of Claimant's karate practice and testified that it did not change his opinion that Claimant's symptoms were attributable to work and not karate. *Id.* at 30; R.R. at 130a. Moreover, while it is true that Dr. Hashemi acknowledged that, if Claimant's practice of karate encompassed crushing, punching and board-breaking, then the doctor would be concerned about the effect of such vigorous exercise

5

activity on Claimant's forearms, the doctor reiterated (1) his understanding that Claimant's practice of karate did not encompass that level of intensity; and (2) his opinion within a reasonable degree of medical certainty that Claimant's eleven-year micro-repetitive work and torqueing at Employer's motorcycle factory caused the compartment syndrome. *Id*. at 29 and 34-37; R.R. at 129a and 134-37a. We turn next to Claimant's testimony.

In general, Claimant described his practice of karate as "sporadic throughout the years." December 7, 2012, Hearing, N.T. at 9; R.R. at 43a. Specifically, Claimant started the Moo Duk Kwan style of karate at the Engle Karate Studio when he was approximately thirteen years old, earned a black belt at age seventeen, did not recall breaking any boards, took a six-year break from karate at age twenty-two when his son was born, returned to karate intermittently thereafter with a frequency of approximately once per week, and has not done any form of karate for over a year. WCJ's May 13, 2013, Decision, F.F. No. 24. In addition, as Employer observed, Claimant testified to wearing foam pads extending to half-way up his forearms for sparring. N.T. at 12-14; R.R. at 46a-48a. Further, acknowledging that Mr. Engle occasionally had broken boards for demonstrations, Claimant testified that his study of karate and the classes at the Engle Karate Studio did not include breaking boards. *Id*. at 13-14; R.R. at 47-48a. We turn next to the testimony of Mr. Engle.

In general, Mr. Engle described karate as a contact sport that includes blocking and stopping contact. He stated that half of a class could be devoted to using upper extremities to block and strike. March 7, 2013, Hearing, N.T. at 17; R.R. at 71a. He also testified, however, that sparring involves "honing your skill of being able to land blows if you needed to but not to land them." *Id*. at 42; R.R.

6

at 96a. In other words, sparring involves controlled or light contact and one is not supposed to actually make contact. *Id*. at 34 and 41-42; R.R. at 88a and 95-96a.

Specifically regarding Mr. Engle's familiarity with Claimant's practice of karate, the WCJ found that Mr. Engle has known Claimant since 1987 and that Claimant earned his fourth-degree black belt in 2008. WCJ's May 13, 2013, Decision, F.F. No. 26. Shortly thereafter, however, Claimant's work schedule changed such that Mr. Engle only saw him a couple of times between 2008 and 2010. In that regard, Mr. Engle noted that, due to Employer cutting back on the number of its employees and Claimant having to work twelve-hour days, he was unable to attend classes. March 7, 2013, Hearing, N.T. at 28; R.R. at 82a. After 2008, therefore, Claimant's karate activities became very limited such that Mr. Engle had no record of attendance for Claimant in 2009. In addition, even though Claimant may have taught a class or two in 2010, Mr. Engle testified that Claimant did not perform much from a physical standpoint due to physical limitations from working for Employer. In that regard, Mr. Engle testified that Claimant complained of aching and weakness from his repetitive work activities but never attributed any of his upper extremity symptoms to karate. Finally, Mr. Engle acknowledged that "Claimant may have punched a board, with his fists, a couple of times in the distant past[,]" F.F. No. 26, but that such activity is not part of the promotion process and he discourages students from doing much of that type of activity. N.T. at 31-33; R.R. at 85-87a.

After reviewing the testimony of the aforementioned three witnesses, especially those portions which the WCJ chose to include in his fact-findings, we conclude that Dr. Hashemi did not consider an inaccurate history in opining that karate did not cause Claimant's work injuries. In asserting that Dr. Hashemi's

7

testimony is incompetent, Employer is urging this Court to reweigh the testimony of Claimant and Mr. Engle. In a workers' compensation case, credibility determinations and evaluation of evidentiary weight are within the exclusive province of the WCJ. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1156 (Pa. Cmwlth. 2007). In addition, the WCJ is not required to conduct "a line-by-line analysis of each statement of each witness, explaining how a particular statement affected the ultimate decision." *Acme Mkts., Inc. v. Workers' Comp. Appeal Bd. (Brown)*, 890 A.2d 21, 26 (Pa. Cmwth. 2006). Accordingly, we conclude that Dr. Hashemi's testimony was not rendered incompetent by virtue of his reliance on the representations of Claimant and Mr. Engle.

Moreover, we note that the WCJ found the testimony of Claimant's medical witness to be credible and rejected the conflicting testimony of Employer's medical witness regarding full recovery and the causal connection between Claimant's work injuries and karate. The WCJ's acceptance of one medical testimony over another does not constitute a reversible error. *Spring Gulch Campground v. Workmen's Comp. Appeal Bd. (Schneebele)*, 612 A.2d 546, 548 (Pa. Cmwlth. 1992). In addition, because the WCJ's findings in that regard are based on credibility determinations, they may not be disturbed on appeal. *Lehigh Cnty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995).

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harley Davidson,
               Petitioner

          v.

Workers' Compensation Appeal
Board (Childs),
               Respondent

:
:
:
:
:    No. 674 C.D. 2016
:
:
:
:

# **O R D E R**

AND NOW, this 7th day of March, 2017, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge