IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victor Oseguera,                                  :
                              Petitioner           :
                                                   :
        v.                                         :  No. 172 C.D. 2017
                                                   :  Submitted: August 11, 2017
Workers' Compensation Appeal              :
Board (F&P Holding Company),              :
                              Respondent  :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: September 6, 2017


        Victor Oseguera (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) decision denying his claim petition because he failed
to meet his burden of establishing that he sustained a new injury or a material
aggravation of a pre-existing condition as a result of his work duties.  For the
reasons that follow, we affirm.


                                    **I.**

        On December 26, 2011, Claimant sustained a low back injury while
harvesting mushrooms for F&P Holding Company (Employer).  Employer filed a

medical-only notice of compensation payable acknowledging that Claimant suffered a work-related low back strain when lifting a box. Claimant returned to work on modified-duty status at his pre-injury wage. Because of increased pain, on August 26, 2012, his chiropractor, Dr. Borja, removed him from work. Claimant filed a claim petition that same day. After being released by Dr. Borja, on October 18, 2012, Claimant returned to work in a light-duty position again at his pre-injury wage. Claimant performed numerous different light-duty positions and was eventually given a seated job laminating plastic on paper.

On November 20, 2012, at Employer's request, Samuel Ross Noble, M.D. (Dr. Noble) examined Claimant. After this exam and upon reviewing Claimant's medical records, Dr. Noble diagnosed Claimant with a work-related low back strain but also opined that an MRI conducted one month after Claimant's work injury showed that he had pre-existing, non-work-related lumbar spine degenerative disc and joint disease. In his report dated January 13, 2013, Dr. Noble opined that Claimant had fully recovered as of his November 20, 2012 evaluation, did not need further medical treatment or work restrictions, and could return to his regular, pre-injury position.

Employer issued a notice of ability to return to work and offered Claimant his pre-injury, full-duty harvester position as of January 26, 2013. Claimant refused the position and provided Employer with work restrictions from another chiropractor that any position he was offered must comply with before he could return to work. Employer then filed a petition to terminate compensation benefits.

Following a hearing during which competing medical records and testimony were provided, on October 29, 2013, WCJ Terry Knox (WCJ Knox) accepted Dr. Noble's opinion that Claimant's degenerative lumbar condition was pre-existing. WCJ Knox went on to find:

> I find that Claimant suffered a December 26, 2011, low back strain and sprain that caused transient aggravation of pain and radicular symptoms from his pre-existing L2-3 and L3-4 degenerative disc disease, which was not materially aggravated by the work injury. I find that his work activities from December to August 2012 were sufficient to occasionally exacerbate his symptoms, requiring continuing conservative treatment, as well as causing some limited periods of work-related disability, for which he was appropriately compensated. . . . I find that he left work due to those increasing symptoms effective August 27th based upon medical recommendation and that he returned to work without earnings loss on October 18th.

(Reproduced Record (R.R.) at 18a.) Moreover, WCJ Knox credited Dr. Noble's opinion that Claimant was fully recovered as of his November 20, 2012 evaluation, and found that Employer met its burden of proving Claimant was fully recovered from his work-related injury.

Based on these findings, WCJ Knox granted Claimant's claim petition and ordered Employer to pay Claimant temporary partial disability benefits between December 26, 2011, and August 26, 2012, as well as temporary total disability benefits from August 27, 2012, to October 17, 2012, inclusive. However, WCJ Knox also granted Employer's termination petition effective

3

November 20, 2012, because Claimant, as of that date, had fully recovered from his work-related injury. No appeal was taken from this decision.

## II.

While all of that was going on, as of March 2013,[1] Claimant was still working for Employer in a light-duty capacity laminating plastic on paper. He stopped working on March 18, 2013, because of pain in his lower back that radiated down both of his legs. That same day, Claimant's current treating chiropractor, Donna M. Kulp, D.C. (Dr. Kulp), provided Claimant with a note stating that he could no longer work, which he provided to Employer. Claimant never returned to his job with Employer or to work in any capacity.

On November 25, 2014, Claimant filed the current claim petition listing his date of injury as March 18, 2013, and describing the injury as "AGGRAVATION OF LOW BACK PAIN AND A LOW BACK INJURY, BILATERAL LEG PAIN." (R.R. at 1a.) With respect to how the injury

---

[1] The time periods in these two proceedings technically overlap because in his current appeal, Claimant alleges that he suffered an aggravation of his work-related injury and had to cease working on March 18, 2013, before WCJ Knox issued his decision on Claimant's first claim petition. However, as WCJ Knox stated in his October 29, 2013 opinion:

> I make no finding whether Claimant's stopping work in March 2013 was due to recurrence of the December 2011 work injury, whether it was due to a material aggravation of that injury, whether it was due to a new injury, or whether it was not at all work-related. Those issues were not before me in the pending petitions.

(R.R. at 17a.)

4

happened, Claimant stated "[w]hile at work on a till making job my symptoms increased, due to the job duties." (*Id.*) Employer denied all material allegations.

At a hearing before WCJ James Stapleton (WCJ Stapleton), Claimant testified that he worked for Employer for 12 or 13 years. For approximately five months prior to March 18, 2013, he had been performing a variety of light-duty jobs for Employer, including laminating paper and loading tills into plastic trays. Claimant was seated for long periods of time in these jobs with only two breaks – one 15-minute break and one hour-long break. Claimant would get pain in his lower back and down into both legs, with more pain in his right leg. Claimant testified that at the advice of his chiropractor, Dr. Kulp, he stopped working completely on March 18, 2013, because of increased pain. Claimant further testified that he had not returned to work anywhere since that time because "I think that if I was to get another job, it'd still bother me. That's the reason I haven't gotten another job." (R.R. at 34a.) As of the date of the hearing, Claimant continued to treat with Dr. Kulp and she had not yet released him to return to work. Claimant testified that he finds his treatment with Dr. Kulp helpful for a few hours, but then the same pain returns. He still experiences pain in his lower back and a stabbing, piercing pain into his right leg, and he takes Tylenol or Advil when he gets a lot of pain. He admitted he was not treating with any other physicians.

On cross-examination, Claimant admitted that he did not suffer a specific event at work in March 2013 that caused him any injury. Rather, he believed he never fully recovered from the December 2011 injury and the

5

symptoms that caused him to leave his employment in March 2013 were a continuation of that previous injury.

Claimant also submitted the deposition testimony of Dr. Kulp, a licensed chiropractor. She testified that when she first saw Claimant on February 4, 2013, Claimant provided her with a history of his December 26, 2011 work-related injury and his medical treatment thereafter. She testified that during that visit, Claimant complained of sharp pain and spastic pain in his low back bilaterally, with pain radiating down both legs and a burning and numbness in both legs which precluded him from carrying out his activities of daily living. Dr. Kulp diagnosed Claimant with a lumbar disc with radicular pain, strain and a lumbar strain/sprain, radiculitis of the lumbosacral area. As a result of that exam, she found that Claimant was only capable of light-duty, with no lifting greater than ten pounds, no repetitive lifting, no pushing and no pulling, and he was limited to working six hours per day. Dr. Kulp testified that on March 18, 2013, she pulled Claimant out of work altogether because his symptoms were getting worse and the prolonged sitting at work, as well as standing, aggravated his symptoms.

On cross-examination, Dr. Kulp admitted that all of her records regarding Claimant indicate his date of injury/onset as December 26, 2011. She further admitted that her notes from March 18, 2013, regarding Claimant state that he had not had any surgeries, traumas or illnesses since his last visit, and her diagnosis was unchanged from his last examination.

Employer presented the deposition testimony and medical report of Dr. Noble, a licensed physician Board certified in physical medicine and rehabilitation, electro diagnostic medicine, spinal cord injury medicine, and pain medicine. Dr. Noble saw Claimant for an independent medical examination (IME) on March 25, 2015, during which he obtained a history from Claimant of his work-related injury. Claimant told Dr. Noble that he injured his back at work on December 26, 2011, when he lifted a box of mushrooms, and that he suffered a left shoulder injury in a motor vehicle accident about a year after that work injury. Dr. Noble testified that during the IME, Claimant did not mention that he sustained a new injury at work on March 18, 2013.

Dr. Noble testified that at the time of the IME, Claimant complained of pain in his left shoulder going down his left arm, which was worse with movement; pain, tiredness and numbness in his low back; pain in his entire right leg; and occasional, less intense pain going down his left leg. Dr. Noble performed a physical examination of Claimant and found no objective findings to support any ongoing acute issue with his lumbar spine.[2]

Based upon Claimant's history, his findings from the physical examination and review of the medical records and transcripts of testimony that were available to him, Dr. Noble opined, within a reasonable degree of medical

---

[2] Specifically, Dr. Noble found that Claimant had normal range of motion of his lumbar spine and lower extremities; no focal tenderness in his lumbar spine; normal tone in his lumbar paraspinal muscles; a negative straight leg raising test; and a normal neurological examination with the exception that he complained of diminished sensation in an area over the lateral aspect of his left lower leg.

certainty, that Claimant was suffering from degenerative disc and joint disease of the lumbar spine that was not related to his employment. Dr. Noble further opined that Claimant did not sustain an aggravation of this pre-existing condition as a result of his duties or activities at work on or around March 18, 2013. Dr. Noble reviewed two MRIs of Claimant's lumbar spine from January 2012 and October 2014, and, in his opinion, the findings were age-related degeneration that was not in any way related to job activity or an aggravation-type injury, and there was no appreciable difference in the two MRIs. Dr. Noble opined that as of March 25, 2015, Claimant did not need any physical restrictions upon his ability to return to work as a result of any work-related injury to his lower back.

Dr. Noble did admit that if an individual had degenerative changes in his back, there would be a limit to his sitting, standing and walking, and that prolonged sitting and standing were the kinds of activities that could possibly make degenerative disc and joint disease symptoms more severe.[3]

WCJ Stapleton denied the claim petition because Claimant failed to sustain his burden of establishing that on March 18, 2013, he sustained a new injury to his lower back or a material aggravation of the pre-existing condition of his lumbar spine as a result of his duties or activities at work for Employer. In arriving at that decision, WCJ Stapleton found Claimant's testimony not credible based upon his demeanor during the hearing. He also found Dr. Kulp's testimony

---

[3] Claimant also submitted into evidence a report from Dr. Kulp in rebuttal to Dr. Noble's June 25, 2015 medical report.

8

that Claimant sustained an aggravation of the pre-existing condition of his lumbar spine as a result of prolonged sitting at work to also not be credible given WCJ Knox's previous decision. He also noted that Claimant did not testify to any specific incident of injury in the course of his employment on March 18, 2013, and that Dr. Kulp's notes do not reflect that Claimant complained when she treated him that day of any increased symptoms or an aggravation of his pain or lower back symptoms as a result of prolonged sitting at work.

Finding Dr. Noble's testimony and medical opinions to be credible and competent, WCJ Stapleton found that Claimant's complaints and symptoms in his lower back and extremities on and after March 18, 2013, represented a continuation of his pre-existing degenerative disc and joint disease in his lumbar spine that was not related to his light-duties and activities at work for Employer.

Claimant then appealed to the Board, arguing that WCJ Stapleton erred in his credibility determinations and the decision to deny Claimant's claim petition for aggravation of a pre-existing condition is not supported by substantial evidence. Claimant further argued that WCJ Stapleton failed to issue a reasoned decision. The Board affirmed the decision of WCJ Stapleton, finding that he did, in fact, issue a reasoned decision, and this appeal followed.[4]

---

[4] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). Substantial evidence has been defined as "such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the **(Footnote continued on next page…)**

**III.**

Claimant's main argument on appeal is that WCJ Stapleton's decision that he did not suffer an aggravation of his pre-existing condition is not supported by substantial evidence.[5]

It is well established that a claimant in a workers' compensation case bears the burden of proving all of the elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592

----

**(continued…)**

party who prevailed before the factfinder." *Waldemeer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

[5] Claimant also contends in his summary of the argument that the WCJ erred in making his credibility determinations because those determinations are not supported by the record and do not accurately summarize the evidence. However, he does not provide anywhere in his brief how the WCJ's credibility determinations were improper. In any event, WCJ Stapleton's reasons for rejecting or accepting testimony are fully explained in his opinion. He rejected Claimant's testimony based on his demeanor at the hearing and explained that he did not find Dr. Kulp's testimony credible given that her opinion contradicts the previous decision, and given that her records indicate the injury was the date of the previous injury, not the date that is the subject of this claim petition. WCJ Stapleton also found Dr. Noble's testimony to be credible because he rendered a clear and unequivocal medical opinion that as of March 25, 2015, the Claimant did not need any physical restrictions upon his ability to return to work as a result of any work-related injury to his lower back.

As we have repeatedly stated, "[t]he WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ is free to accept or reject the testimony of any witness in whole or in part, including a medical witness. *US Airways v. Workmen's Compensation Appeal Board (Johnston)*, 713 A.2d 1192, 1195 (Pa. Cmwlth. 1998). We are bound by those credibility determinations and cannot overturn them on appeal.

(Pa. 1993). This includes proving that the injury arose in the course of his employment and was related thereto. *Coyne v. Workers' Compensation Appeal Board (Villanova University and PMA Group)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). Specifically, to establish a work-related aggravation of a pre-existing condition, a claimant must show a causal connection between the work injury and the aggravation. *Chick-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678 (Pa. Cmwlth. 2002). "Where the causal connection is not obvious, unequivocal medical testimony is required to establish the causal connections between the work incident and the disability." *Southwest Airlines/Cambridge Integrated Service v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280, 286 (Pa. Cmwlth. 2009) (citation omitted).

Claimant has not met this burden. First, Claimant did not testify to any specific incident on March 18, 2013, causing the complained-of injury and Dr. Kulp's notes from that day do not reflect that Claimant complained of any increased symptoms or an aggravation of his pain or lower back symptoms as a result of prolonged sitting. Second, Claimant did not establish that there was a causal connection to any purported injury because WCJ Stapleton found Claimant's and Dr. Kulp's testimony not to be credible. Ignoring all that, Dr. Noble's testimony alone is more than sufficient to establish that Claimant did not aggravate his work-related injury on March 18, 2013, having unequivocally testified that Claimant did not sustain an aggravation of this pre-existing condition on or around that date.

11

Claimant suggests that his claim petition should have been granted because WCJ Knox's October 29, 2013 decision corroborates his testimony regarding the current petition since he found a "similar exacerbation" with regard to the December 2011 work injury. (Petitioner's Brief at p. 9.) However, it is not apparent how that decision could be interpreted in any way as corroborating Claimant's testimony regarding the current alleged aggravation of his pre-existing degenerative condition. That decision found Claimant's degenerative condition was pre-existing and that he had fully recovered from his December 2011 lower back strain and sprain. Moreover, WCJ Knox specifically noted that the issues surrounding Claimant's leaving work in March 2013 were not before him.

Claimant also asserts that WCJ Stapleton did not issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act).[6] A decision is "reasoned" if it allows for adequate appellate review without further

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. Section 422(a) provides, in pertinent part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. . . . The adjudication shall provide the basis for meaningful appellate review.

*Id.*

elucidation.  *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).  Moreover:

> Although our Supreme Court has held that a WCJ need not explain credibility determinations relating to a witness who testifies before the WCJ, Section 422(a) of the Act requires some explanation of credibility determinations by a WCJ with regard to conflicting deposition testimony in order to enable this Court to review a WCJ's decision.  Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where the testimony of such witnesses is conflicting.  A WCJ may satisfy the reasoned decision requirement if he summarizes the witnesses' testimony 'and adequately explains his credibility determinations.'  *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry),* 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007).

*Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012).

Here, as outlined above, WCJ Stapleton summarized the conflicting testimony of the medical witnesses, made credibility determinations, and provided adequate reasons for those credibility determinations.  WCJ Stapleton's explanation is sufficient to allow for adequate appellate review, and "Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations."  *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citing *Kasper v. Workers' Compensation Appeal Board (Perloff Brothers)*, 769 A.2d 1243 (Pa. Cmwlth. 2001)).

13

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victor Oseguera,                          :
                          Petitioner     :
                                          :
          v.                              :   No. 172 C.D. 2017
                                          :
Workers' Compensation Appeal              :
Board (F&P Holding Company),              :
                          Respondent      :

**O R D E R**

AND NOW, this 6<u>th</u> day of <u>September</u>, 2017, the order of the Workers' Compensation Appeal Board dated January 25, 2017, at No. A16-0322, is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge