HELVETIA COAL COMPANY and General Recovery, Inc. (formerly Cantlon Associates, Inc.), Petitioners

v.

WORKERS' COMPENSATION APPEAL BOARD (LEARN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Aug. 25, 2006.
Decided Dec. 15, 2006.

Toni J. Minner, Pittsburgh, for petitioner, Helvetia Coal Company.

Ronald J. Fonner, Greensburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Helvetia Coal Company and General Recovery, Inc. (formerly Cantlon Associates, Inc.) (Employer) seeks review of the February 22, 2006 order of the Workers' Compensation Appeal Board (Board) that affirmed the remand decision of the Workers' Compensation Judge (WCJ) granting the claim petition filed by Glenn Learn (Claimant) seeking benefits for a permanent hearing loss. Employer questions whether the WCJ erred in finding that Claimant had a 34.7 percent binaural impairment as a result of his occupational noise exposure; whether the medical evidence presented by Claimant constitutes substantial competent evidence supporting a work-related permanent hearing loss; and whether the WCJ erred in concluding that the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626, prohibits consideration of the effects of hearing protection.

On April 21, 2000 Claimant filed a claim petition alleging that as of January 5, 1999 he suffered from a hearing loss due to his exposure to occupational noise while working for Employer at its coal mines. Claimant testified that he worked for Employer in various positions since 1978 and that from 1997 until his last day of work on January 4, 1999 he worked as either a mine foreman or a superintendent seven hours a day, six days a week mostly underground. His job required him to travel to problem areas of the mine and to evaluate the noise, and he spent a lot of time around belts, worked near pumps and ventilation equipment and was exposed to high-pitched noises from belt drives, rollers, drills and jackhammers. Hearing protection was mandatory only in one or two sections of the mine before 1998. After hearing protection became mandatory throughout the mine in 1998, he was given muffs, which he mounted into his hard hat. He wore them "in a significantly noisy environment." May 31, 2000 Hearing, Notes of Testimony (N.T.), p. 35; Reproduced Record (R.R.) at 70a. He could not wear hearing protection constantly because he had to be able to hear certain noises, such as those from roof movement and equipment malfunction. He owned a motor boat, operated a motorcycle and engaged in archery hunting, and he always wore hearing protection while using shotguns.

Claimant presented the August 8, 2001 deposition transcript of testimony from David R. Rogerson, M.D., a board-certi-

fied otolaryngologist, who examined Claimant on April 23, 2001, reviewed his work history and performed an audiological evaluation. Using the American Medical Association (AMA) formula, Dr. Rogerson determined that Claimant suffered from a 20.3 percent binaural hearing loss, and he opined that the most significant cause of Claimant's hearing loss was his industrial noise exposure. Dr. Rogerson noted a lack of any other possible causes of the hearing loss other than the normal aging process and discounted Claimant's use of mowers or riding a motorcycle as a cause.

Employer presented the October 25, 2001 deposition testimony of Dr. Sydney N. Busis, M.D., a board-certified otolaryngologist, who examined Claimant on June 27, 2000. Dr. Busis opined that according to the AMA Guides Claimant had a 39.375 percent hearing impairment on the right, a 33.75 percent hearing impairment on the left and a 34.7 percent binaural impairment, that the most common causes of sensorineural hearing loss are heredity, aging and noise exposure and that Claimant's hearing loss was not caused by occupational noise induced problems. He stated that it was unlikely that Claimant was exposed to long-term hazardous noise while working in the mines because he wore hearing protection and that his hearing loss could have come from his early years of noise exposure while working for other employers.

The WCJ accepted Dr. Busis' testimony only to the extent of his evaluation that Claimant had a 34.7 percent binaural hearing loss. The WCJ found credible the testimony from Claimant regarding his occupational noise exposure and from Dr. Rogerson regarding the cause of Claimant's hearing loss and the effects of hearing protection; the WCJ rejected Dr. Busis' conflicting testimony. He granted the claim petition for a 34.7 percent work-related hearing loss as of January 5, 1999, entitling Claimant to "total disability benefits" of $588 per week for 88.33 weeks. WCJ's March 29, 2002 Decision, Findings of Fact No. 15.

On appeal, the Board noted its concerns and perceived inconsistencies in Dr. Rogerson's testimony, in Claimant's testimony and in the WCJ's findings: Dr. Rogerson assumed that Claimant was exposed to noise eight hours a day when Claimant testified that he worked seven hours a day; Dr. Rogerson was unaware that Claimant worked for Employer in a variety of positions and believed that Claimant wore hearing protection only when convenient although he testified that he wore it in a significantly noisy environment; Dr. Rogerson admitted that he did not have specific information regarding Claimant's noise exposure in the last three to four years of employment; and Dr. Busis did not opine that Claimant's 34.7 percent hearing loss was work related. The Board stated that on its face a discrepancy arises as to whether the 34.7 percent hearing loss found by the WCJ was "permanent." Board's April 23, 2003 Opinion, p. 5. The Board vacated the WCJ's order and remanded the matter for the WCJ to address the Board's concerns and the inconsistencies that it raised, to make a finding on the notice issue and to correct the WCJ's reference to total disability benefits.

On remand, the WCJ accepted Claimant's testimony as credible and found that he worked seven hours a day, six days a week mostly underground and sometimes more than seven hours a day and that he experienced long-term exposure to hazardous occupational noise during the last three years of his employment. The WCJ accepted Dr. Rogerson's opinion regarding the cause of Claimant's hearing loss and

accepted in part Dr. Busis' opinion that Claimant had a 34.7 percent hearing impairment. The WCJ again granted the claim petition and awarded hearing loss benefits at the rate of $588 per week for 88.33 weeks. Concluding that the WCJ addressed the Board's concerns and that the WCJ's remand decision is supported by substantial competent evidence, the Board affirmed the decision but remanded the matter for the WCJ to determine when statutory interest should begin to accrue. The WCJ determined on remand that interest should begin to accrue as of the date of Dr. Rogerson's examination of Claimant on April 23, 2001, which the Board affirmed.[1]

■■■ Section 306(c)(8)(i) of the Act, 77 P.S. § 513(8)(i), provides in part:

> For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise,[2] the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides.[3] The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks.

A claimant has the burden of establishing that he or she suffers from a permanent loss of hearing of greater than ten percent that is medically established to be work related and caused by the long-term exposure to hazardous occupational noise. *See Flatley v. Workers' Compensation Appeal Board (Mallinckrodt Chem., Calsicat Div.),* 803 A.2d 862 (Pa.Cmwlth.2002); Section 306(e)(8)(iii) of the Act. Under 306(c)(8)(x), however, "[w]hether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and *not a part of the claimant's burden of proof in a claim.*" (Emphasis added.) Section 306(c)(8)(viii) provides that "[w]henever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought."

---

1. The Court's review is limited to determining whether constitutional rights were violated, an error of law was committed, a practice or procedure of the Board was not followed or the findings of fact are supported by substantial evidence in the record. *Select Sec., Inc. v. Workers' Compensation Appeal Board (Kobrin),* 901 A.2d 1129 (Pa.Cmwlth.2006). The WCJ has sole power to evaluate the evidence and to determine witness credibility and may accept or reject any testimony in whole or in part. *Miller v. Workers' Compensation Appeal Board (Airborne Freight),* 817 A.2d 1200 (Pa. Cmwlth.2003).

2. The term "hazardous occupational noise" is interpreted as "noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure) (July 1, 1994)." Section 105.4 of the Act, added by Section 1 of the Act of February 23, 1995, P.L. 1, 77 P.S. § 25.4. The term "long-term exposure" means "exposure to noise exceeding the permissible daily exposure for at least three days each week for forty weeks of one year." Section 105.6, added by Section 1 of the Act of February 23, 1995, P.L. 1, 77 P.S. § 25.6. The permissible noise exposure is 90 decibels for 8 hours per day. 29 C.F.R. § 1910.95.

3. The Impairment Guides refers to "the American Medical Association's Guides to the Evaluation of Permanent Impairment, Fourth Edition (June 1993)." Section 105.5 of the Act, added by Section 1 of the Act of February 23, 1995, P.L. 1, 77 P.S. § 25.5.

Whether the claimant was exposed to hazardous occupational noise is a question of fact to be found by the WCJ. *Joy Mining Mach. v. Workers' Compensation Appeal Board (Noggle)*, 805 A.2d 1279 (Pa. Cmwlth.2002).

Employer claims that no competent evidence exists to support the WCJ's finding that Claimant had a 34.7 percent binaural impairment caused by occupational noise exposure because the WCJ rejected Dr. Busis' opinion. Relying on the fact that Dr. Rogerson obtained the audiologic score of a 20.3 percent hearing loss 10 months after Dr. Busis' audiogram, Employer also calls into question the permanency of Claimant's hearing loss. The WCJ found credible Claimant's testimony regarding his exposure to occupational noise since 1978 and Dr. Rogerson's opinion that the most significant cause of Claimant's hearing loss was his industrial noise exposure. It was within the WCJ's prerogative to accept Dr. Rogerson's opinion as to the causal relationship between Claimant's hearing loss and his occupational noise exposure and to accept in part the result of the audiogram conducted by Dr. Busis to determine the degree of the hearing loss.

■ The discrepancy in the results of the audiograms performed by Dr. Rogerson and Dr. Busis does not affect the determination of permanency of Claimant's hearing loss. Dr. Rogerson testified that a variation of a test can be up to ten decibels and that the discrepancy between the results of the two audiograms was within a test-to-retest variation which "could be a 20 decibel difference." Dr. Rogerson's Deposition, p. 38; R.R. 133a. The WCJ found as follows: "The difference here is

fewer than 20 decibels. I find the higher degree of impairment more credible because I credit the significant subjective complaints Claimant described in his May 31, 2000 hearing testimony." WCJ's December 11, 2003 Decision, Findings of Fact No. 6. The testimony accepted by the WCJ as credible constitutes substantial competent evidence supporting his finding that Claimant had a 34.7 percent work-related binaural hearing loss.

Employer contends, however, that Dr. Rogerson's opinion cannot constitute substantial competent evidence to support the finding that Claimant's binaural impairment is attributable to occupational noise exposure because the doctor's opinion was based on inaccurate information and assumptions as to Claimant's work history, work hours, noise exposure and hearing protection and a lack of knowledge of long-term exposure to hazardous occupational noise under the Act. Employer relies on Dr. Rogerson's testimony on cross-examination that he had only the reports of Dr. Busis and Dr. Mark R. Klingensmith and no other data when he initially evaluated Claimant and that he had no specific information regarding Claimant's exposure during the last three or four years of employment.

■ Under Section 306(c)(8)(x) of the Act, the issue of whether Claimant was exposed to long-term hazardous occupational noise shall be an affirmative defense to the claim, "including whether the claim was filed within three years of last exposure." *Meadville Forging Co. v. Workers' Compensation Appeal Board (Artman)*, 747 A.2d 958, 961 (Pa.Cmwlth.2000).[4]

4. The employer is required to administer a continuing, effective hearing conservation program whenever employees' noise exposures equal or exceed an 8–hour, time-weighted average sound level of 85 decibels. 29 C.F.R. § 1910.95(c). A claimant could be exposed to an 8-hour, time-weighted average below 90 decibels two days a week and still be exposed to long-term hazardous occupational noise if noise levels, to which a claim-

Thus "[a]ll that a claimant has to do to meet his or her burden under Section 306(c)(8)(i) of the Act is to *prima facie* establish that the claim was timely filed by showing that he or she was exposed to occupational noise while working for Employer during the three years preceding the claim." *Id.* Employer presented no evidence to establish that Claimant was not subject to long-term exposure to hazardous occupational noise.

 Dr. Rogerson's testimony that Claimant worked eight hours a day does not affect his unequivocal testimony regarding the cause of the hearing loss. A medical witness' opinion must be viewed as a whole, and inaccurate information will not defeat the opinion unless it is dependent upon the inaccuracy. *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391 (Pa.Cmwlth.2001). Any inconsistencies between Dr. Rogerson's testimony and Claimant's testimony regarding his work history and noise exposure are a matter of the weight to be given to Dr. Rogerson's testimony, not the competency of his testimony. The testimony accepted by the WCJ supports the findings that Claimant experienced long-term exposure to hazardous occupational noise during the last three years of his employment and that Claimant's noise exposure was the most significant cause of his hearing loss.

Finally, Employer's contention that the WCJ failed to consider Claimant's use of hearing protection is not supported by the record. The WCJ did consider Claimant's use of hearing protection, as indicated by the WCJ's finding that "while he clearly wore hearing protection from time to time, ... operational needs and Claimant's supervisory responsibilities prevented him from wearing it consistently." WCJ's December 11, 2003 Decision, Findings of Fact No. 5. The Court also notes that "whether a person is exposed to long-term exposure to hazardous noise is to be measured without the use of hearing protection devices." *Meadville Forging*, 747 A.2d at 961. The Court concludes that the WCJ's findings are supported by substantial competent evidence and affirms the Board's order.

### ORDER

AND NOW, this 15th day of December, 2006, the Court affirms the order of the Workers' Compensation Appeal Board.

---

ant was exposed, exceeded those permissible for at least three days a week for forty weeks a year. *See General Elec. Co. v. Workers'* *Compensation Appeal Board (Bower)*, 734 A.2d 492 (Pa.Cmwlth.1999).