IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Mullen,                           :
                    Petitioner           :
                                         :
        v.                               :   No. 1083 C.D. 2021
                                         :
Northampton Township (Workers'           :
Compensation Appeal Board),              :
                    Respondent           :   Submitted:  January 27, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                    FILED:  May 17, 2023

        Robert Mullen (Claimant) petitions this Court *pro se* for review of the August 4, 2021 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) that denied Claimant's claim petition alleging he suffered a work-related hearing loss while employed as a laborer for Northampton Township (Township).  On appeal, Claimant argues that the WCJ erred in finding that Claimant's hearing loss was not caused by work-related exposure to noise.[1]  Claimant also argues that due to the COVID-19 pandemic, he was denied the opportunity to present evidence in a live hearing before the WCJ. After review, we affirm the Board.

_____

        [1] Section 306(c)(8)(i) of the Workers' Compensation Act (Act), enacted by the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8)(i), authorizes an award of benefits for occupational hearing loss caused by long-term exposure to hazardous occupational noise.

## I. Background

Claimant worked for the Township's parks and recreation maintenance department for approximately 12 years. Certified Record (C.R.), Item No. 16, Claimant Deposition, 11/4/19, at 6, 40. Claimant, who was represented by counsel at the time, filed a claim petition on May 21, 2019, alleging that he suffered from occupational hearing loss caused by exposure to noise throughout his employment with the Township. C.R., Item No. 2. Employer denied that Claimant's hearing loss was work related in an answer filed on May 31, 2019, and through issuance of a Notice of Compensation Denial (NCD) on June 6, 2019. C.R., Item Nos. 4, 27.

### A. Claimant's Evidence

Claimant testified by deposition on November 4, 2019, that he began working for the Township on May 8, 2006. C.R., Item No. 16, Claimant Deposition, 11/4/19, at 6. Claimant's job duties consisted of plowing snow, mowing grass, and maintaining the Township's parks and common areas. *Id.* In fulfilling his duties, Claimant operated several types of equipment, including a snowplow, backhoe, riding lawnmower, chainsaw, woodchipper, weedwhacker, and a Sawzall. *Id.* at 10-11, 16, 20. Claimant wore earplugs while operating the Township's equipment, which Claimant described as very loud. *Id.* at 19-20. Claimant mowed grass throughout his 8-hour shift every day from April to November. *Id.* at 18. In approximately 2013, Claimant became aware he had hearing issues, as he had difficulty hearing the television and his family members had to repeat themselves when speaking to Claimant. *Id.* at 78. Claimant stated that he was first made aware his hearing loss could be connected to his employment with the Township during an examination by Thomas Willcox, M.D., on September 4, 2019. *Id.* at 78.

2

During cross-examination, Claimant conceded that his claim petition was filed on May 21, 2019, a few months before Dr. Willcox advised Claimant of a possible connection between his hearing loss and his work for the Township. *Id.* at 81-82. Claimant acknowledged that he only used the woodchipper "once [or] twice." *Id.* at 69. If it rained, Claimant worked indoors cleaning equipment. *Id.* at 58. Claimant agreed that, prior to working for the Township, he worked for Ryder Transportation fueling trucks and performing minor repairs, such as replacing lightbulbs and tires. *Id.* at 71. Claimant wore earmuffs when changing a tire, as that job required the use of a hydraulic jack and pneumatic wrench. *Id.* at 72.

Claimant also testified before the WCJ during a telephonic hearing held on June 15, 2020. C.R., Item No. 13. Claimant advised that he did not suffer from hearing loss when he first began working for the Township in 2006. Notes of Testimony (N.T.), 6/15/20, at 7. Claimant advised that his hearing has not worsened since he stopped working for the Township. *Id.* at 10.

Claimant's medical expert, Thomas Willcox, M.D., is board certified in otolaryngology, head and neck surgery, and in neurotology. C.R., Item No. 14, Willcox Deposition, 12/11/19, at 6. Dr. Willcox testified that he performed an independent medical examination (IME) of Claimant on September 4, 2019, for the purpose of evaluating Claimant's hearing. *Id.* at 10. During the IME, Claimant underwent a hearing examination, which included an audiogram, tympanometry test, and a distortion product otoacoustic emission test. *Id.* at 10-11. Claimant advised Dr. Willcox that he has difficulty hearing, that he must frequently ask family members to repeat themselves, and that his family has complained about the volume at which he speaks and watches television. *Id.* at 12. Dr. Willcox understood that Claimant worked for the Township for approximately 12 years and that his work

3

duties required the use of lawn equipment such as tractors and snowblowers. *Id.* at 13. Claimant also had occasion to operate a chainsaw, woodchipper, drills, and an air gun compressor. *Id.* Dr. Willcox opined that the sound generated by such equipment could exceed 90 decibels, which is the threshold of sound permitted by the United States Department of Labor's Occupational Safety and Health Administration. *Id.* at 14, 19.

The results of Claimant's physical examination and hearing tests indicated that Claimant suffered from "mild to severe sensorineural hearing loss" and "decreased speech discrimination" in both ears, which relates to the ability to distinguish words. *Id.* at 21. Dr. Willcox calculated that Claimant had a binaural hearing impairment of 35%. *Id.* at 21. Dr. Willcox noted that Claimant had both "noise-induced" and age-related hearing loss, but he opined that the primary cause of Claimant's hearing loss was his exposure to occupational noise while working for the Township. *Id.* at 22-23. Claimant's hearing deficits "significantly exceed[ed]" that of other individuals in his age group, placing him in the bottom 5% of a "demographically equal population." *Id.* at 23, 25. Moreover, occupational hearing loss generally manifests in the first 10-15 years of employment. *Id.* at 23, 27, 29. Dr. Willcox disagreed with the opinion of the Township's medical expert, Lee Rowe, M.D., that occupational noise had not contributed to Claimant's hearing loss. *Id.* at 29.

During cross-examination, Dr. Willcox acknowledged that a physical examination Claimant underwent prior to his employment with the Township indicated he had "some hearing loss" at that time. *Id.* at 39. Given Claimant's history of noise exposure at work and the degree of Claimant's hearing loss for someone in his age group, Dr. Willcox drew the conclusion that it was "more likely

4

than not" that occupational noise contributed to the extent of Claimant's loss of hearing. *Id.* at 47. Dr. Willcox conceded that he did not know the specific level of noise to which Claimant was exposed while working for the Township and that Claimant indicated he wore earplugs whenever he worked in a "high-noise" environment. *Id.* at 55-56.

## B. The Township's Evidence[2]

The Township presented the February 28, 2020 deposition testimony of Claimant's supervisor, Damon Andreoli. C.R., Item No. 22, Andreoli Deposition, 2/28/20. Mr. Andreoli has worked for the Township's parks and recreation department since 1990, performing the same job duties as Claimant. *Id.* at 8, 54. Mr. Andreoli did not believe he was exposed to excessively loud noise while plowing snow. *Id.* at 10. He advised that chainsaws were only used a few times every six months to cut tree limbs damaged during a storm. *Id.* at 14. The Township used an outside tree service for "big job[s.]" *Id.* The woodchipper was acquired by the Township in 2011 and used approximately six times. *Id.* at 42. Mr. Andreoli agreed that the woodchipper was loud and maintenance staff wore earplugs when it was in operation. *Id.* at 43. Mr. Andreoli stated that the Sawzall was used for several days in 2007 to take apart metal bleachers; however, most of the "cuts" were made with a torch. *Id.* at 18-19.

Mr. Andreoli acknowledged that the Township's riding mowers were also loud and that he and Claimant always wore earplugs when mowing grass, which generally occurred eight months of the year. *Id.* at 24-25, 71. He disputed

---

[2] The Township also presented the testimony of Stephen Kingsdorf, a sergeant with the Township police department. Sergeant Kingsdorf testified to the circumstances that led to Claimant's separation from employment with the Township. We will not summarize his testimony herein, as those facts are not relevant to the issues before this Court.

5

Claimant's account of the hours he spent mowing each week, as preparing the mowers and driving to each work site took approximately two hours. *Id.* at 31. Moreover, Mr. Andreoli estimated that maintenance staff spent "no more than" three to three-and-a-half days each week mowing. *Id.* at 28. The remaining time was spent on equipment maintenance and collecting trash. *Id.* at 27-28. Ear protection was not required to collect trash, as maintenance staff drove golf carts, which Mr. Andreoli asserted were not noisy. *Id.* at 51. While Mr. Andreoli did not disagree with Claimant's testimony regarding the specific duties he performed, Mr. Andreoli felt that Claimant exaggerated the extent to which ear protection was required and the number of hours Claimant spent using noisy equipment. *Id.* at 64-65. Mr. Andreoli could not say whether Claimant had problems when he first started working for the Township in 2006. *Id.* at 65. He agreed that Claimant talked loudly, however, and during the last few years of his employment with the Township, Claimant mentioned he "always [had] to turn the TV up." *Id.* at 66.

Nancy Opalka, director of the Township's parks and recreation department, also testified that Claimant "highly exaggerated" the hours he worked with loud equipment. C.R., Item No. 23, Opalka Deposition, 2/28/20, at 13. She estimated that during moving season Claimant mowed, at most, five hours per day. *Id.* at 15-16. Ms. Opalka advised that the Township maintains logs documenting the number of hours each piece of equipment is used, and by which employee. *Id.* at 19. Each mower is equipped with a clock that records the number of hours it has been in operation. *Id.* at 21. According to one of the Township's logs, Claimant spent 100 hours mowing from April 2017 through January 2018. *Id.*

Ms. Opalka stated that Claimant only used a weedwhacker during his first year of employment, as that duty is generally handled by seasonal workers. *Id.* at

6

14. She denied that Claimant ever operated a woodchipper, although she conceded he may have been "in the vicinity" and thrown wood into the machine. *Id.* at 40. Ms. Opalka acknowledged that Claimant was a "hard worker[,]" but she felt that Claimant's testimony regarding his work duties and the hours he spent using certain equipment was "highly exaggerated." *Id.* at 13, 54.

The Township also presented the deposition testimony of Dr. Rowe, who conducted an IME of Claimant on November 7, 2019. C.R., Item No. 21, Rowe Deposition, 2/20/20, at 14. At that time, Claimant advised Dr. Rowe that he had experienced progressive loss of hearing over the last seven years. *Id.* Claimant denied having a history of ear disease, or a family history of hearing loss, although Claimant did experience vertigo at times, particularly while driving at night. *Id.* at 14, 17. Claimant acknowledged that he was diagnosed with hypertension in 2006, for which he took medication. *Id.* at 17. Claimant's work history from 1981 through 2005 consisted of welding and operating heavy equipment, which required the use of ear protection. *Id.* at 15. Claimant indicated that he used ear protection at all times during the period he was employed by the Township. *Id.* at 16.

After obtaining Claimant's work and medical history, Dr. Rowe conducted a physical examination, which included several hearing tests. *Id.* at 17. Dr. Rowe noted that he was able to converse with Claimant in a quiet room at a "normal conversation level." *Id.* at 18. The results of tuning fork testing, which detects physical abnormalities in the ear, was normal. *Id.* The results of Claimant's audiometric testing indicated that he had poor speech discrimination and that he could only correctly repeat 48% of words delivered to his left ear at a shouting level and 52% of words delivered to his right ear. *Id.* at 19, 21, 25. Dr. Rowe noted that individuals with occupational noise-induced hearing loss typically do not suffer from

7

speech discrimination, and their speech discrimination scores are generally never less than 70%. *Id.* at 21, 26. Dr. Rowe noted that Claimant's audiometric testing from October 2018 generated speech discrimination scores of 68% for Claimant's left ear and 72% for his right ear. *Id.* at 28. In October 2019, his speech discrimination scores had dropped to 52% for both ears. *Id.* Dr. Rowe opined that these results suggested that Claimant's hearing loss stems not from occupational noise exposure but from "an entirely different" source. *Id.* at 29. Dr. Rowe found it noteworthy that the dramatic decrease in Claimant's speech discrimination scores occurred long after Claimant stopped working for the Township and was exposed to any allegedly hazardous noise. *Id.* at 30. Dr. Rowe also noted that hearing loss that is attributable to noise exposure does not continue to progress after the exposure ends. *Id.* at 84. In addition to age, Claimant's hearing loss could have been caused by hypertension, which is a condition associated with hearing loss. *Id.* at 31, 74. Dr. Rowe also found it significant that Claimant wore ear protection at all times while using Township equipment, which would have protected Claimant from hazardous noise. *Id.* at 43.

Additionally, Dr. Rowe opined that the audiogram produced from Claimant's audiometric testing did not indicate the presence of noise-induced hearing loss, as it did not document a "notch," or 10 decibels decrease in hearing at higher frequencies. *Id.* at 22-23. Dr. Rowe explained that such a decrease must be recorded on both sides to indicate occupational noise-induced loss of hearing. *Id.* at 23. Claimant's audiogram indicated a 5-decibel improvement in hearing at higher frequencies on Claimant's left side and a 5-decibel worsening on the right. *Id.* Dr. Rowe stated that such a result indicated age-related hearing loss. *Id.* at 24. Dr. Rowe also reviewed an audiogram from Dr. Willcox and opined that it was "entirely consistent with age-

8

related hearing loss and other factors" that are unrelated to occupational noise. *Id.* at 35.

Dr. Rowe disagreed with Dr. Willcox basing his opinion that Claimant's hearing loss was related to occupational noise on the demographic chart placing Claimant in the bottom 5% of males in his age group. *Id.* at 32-33. Dr. Rowe explained that hearing loss may be caused by so many factors that add up over the course of time and an individual in the 5th percentile for hearing is "just as likely to have aging as the only reason" for hearing loss. *Id.* at 33. Ultimately, Dr. Rowe could not find any evidence to suggest Claimant's hearing loss was related to his work for the Township. *Id.* at 81.

### C. WCJ Decision

In a decision circulated on October 26, 2020, the WCJ credited Claimant's testimony to the extent he suffered from a severe hearing impairment. C.R., Item No. 5, WCJ Decision, Finding of Fact (F.F.) No. 11. The WCJ rejected Claimant's testimony that his hearing loss was caused by exposure to occupational noise while employed by the Township. *Id.* The WCJ based his credibility determination on Claimant's tone, demeanor, and temperament while testifying by telephone on June 15, 2020. *Id.* Furthermore, the WCJ considered that Claimant was not a qualified medical expert or an occupational noise expert, and the findings from Claimant's audiograms were inconsistent with occupational noise exposure. *Id.* The WCJ also noted that Claimant, who was 61 years old, wore hearing protection at work and Claimant's hearing loss progressed after he left employment with the Township. *Id.*

The WCJ found that Dr. Rowe was more credible than Dr. Willcox, as Dr. Rowe cogently explained the results of Claimant's audiograms, and he comprehensively addressed Dr. Rowe's opinions. F.F. No. 14. Dr. Willcox,

9

conversely, was unaware of the specific levels of noise created by the machinery Claimant used at work and he failed to adequately explain how Claimant's employment was a substantial contributing factor in Claimant's hearing loss. *Id.*

Additionally, the WCJ credited the "consistent and cogen[t]" testimony of Mr. Andreoli, and Ms. Opalka, as their extensive periods of employment with the Township gave them a strong foundation for describing Claimant's work duties and his exposure to occupational noise. F.F. Nos. 12-13. Ms. Opalka's testimony was also supported by the Township's maintenance log records. F.F. No. 13. While the WCJ found that Claimant suffered severe binaural hearing loss, he also found that Claimant failed to meet his burden of proving that his hearing loss was work related. F.F. Nos. 16-17; Conclusion of Law No. 2. Accordingly, the WCJ denied the claim petition. WCJ Decision at 13. Claimant filed a *pro se* appeal to the Board, which affirmed the WCJ. This appeal followed.[3]

## II. Issues

On appeal, Claimant argues that the WCJ erred in erred in finding that Claimant's hearing loss was not caused by work-related exposure to noise. Claimant also argues that he was denied the opportunity to present evidence in a live hearing before the WCJ.

## III. Discussion

First, we address whether the WCJ erred in finding that Claimant's hearing loss was not caused by work-related exposure to noise. Claimant argues that the

---

[3] Our review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). Substantial evidence is relevant evidence that a reasonable mind would deem adequate to support a conclusion. *Iacono v. Worker's Comp. Appeal Bd. (Chester Hous. Auth.)*, 624 A.2d 814, 817 (Pa. Cmwlth. 1993).

10

evidence presented supports his claim that exposure to hazardous noise while employed by the Township was a direct cause of Claimant's hearing loss. Claimant asks that this Court "consider the required daily use of heavy machinery" that he claims contributed to his hearing loss.

In a claim petition, the claimant bears the burden of establishing a right to workers' compensation benefits and proving all necessary elements to support such an award. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ. and PMA Grp.)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). The claimant must establish that his injury was sustained during the course and scope of employment and is causally related to that employment. *Id.* Whether a claimant has been exposed to hazardous occupational noise is a question of fact for the WCJ. *Helvetia Coal Co. v. Workers' Comp. Appeal Bd. (Learn)*, 913 A.2d 326, 329 (Pa. Cmwlth. 2006).

The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). In executing his role as fact-finder, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Id.* It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the inquiry before this Court is whether evidence exists to support the findings actually made. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005). We may only overturn a credibility determination if it is arbitrary and capricious, or fundamentally dependent on a misapprehension of material facts, or so otherwise flawed as to render it irrational. *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

11

In requesting that this Court reverse the Board, Claimant essentially asks that we reweigh the evidence and overturn the WCJ's findings of fact and credibility determinations. In exercising our appellate jurisdiction in a workers' compensation matter, this Court may not usurp the WCJ's role as factfinder and arbiter of credibility. The WCJ thoroughly explained the evidence that formed the basis for his findings of fact as well as his rationale for finding the Township's witnesses more credible than Claimant's. Accordingly, we must reject Claimant's argument that the WCJ erred in denying his claim petition after finding that Claimant's hearing loss was not related to his employment with the Township.

Next, we address Claimant's argument that he was prevented from presenting evidence to support his position because the WCJ hearing at which he testified was not held in person, due to the COVID-19 pandemic. Having reviewed the record in this matter, we conclude that Claimant waived this issue, as he failed to raise it in his appeal to the Board.

Section 111.11(a)(2) of the Special Administrative Rules of Practice and Procedure before the Board (Board Rules) provides that an appeal filed with the Board must contain

> [a] statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient.

34 Pa. Code § 111.11(a)(2). The Board's appeal form, LIBC-25/26, provides space where an appellant should allege which findings of fact made by a WCJ are in error and unsupported by substantial evidence, which errors of law were committed, and

12

the reasons why a WCJ's decision fails to conform to the provisions of the Act.[4] Where a claimant has failed to raise an issue in any manner before the Board, that issue is waived. *Starr Aviation v. Workers' Comp. Appeal Bd. (Colquitt)*, 155 A.3d 1156, 1162 (Pa. Cmwlth. 2017).

Claimant's LIBC-25/26 merely alleges that "[the WCJ] relied on documents not pertaining to [his] hearing loss case," and that "[he] was not able to present [his] evidence/case." C.R., Item No. 6. The documents at issue concerned the reasons for Claimant's separation from employment with the Township. In its opinion, the Board notes that Claimant sought a remand for the purpose of presenting additional evidence regarding his termination. C.R., Item No. 8, Board Decision at 2. As Claimant failed to raise before the Board any issue regarding the propriety of holding a hearing by telephone or to suggest that he was somehow prejudiced by such a hearing, the issue is waived.[5]

For the above reasons, we affirm the Board's order affirming the WCJ.

_____
ELLEN CEISLER, Judge

---

[4] *See* Pa. Dep't of Lab. & Indus., Rules For Appealing A [WCJ's] Decision to the [Board]. https://www.dli.pa.gov/Businesses/Compensation/appeals/Documents/licb-2526.pdf. (last visited May 16, 2023).

[5] Even had Claimant raised such a challenge in his appeal to the Board, he fails to support this argument in his brief with pertinent legal authority, as required by Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure (Rule 2119(a)), which relevantly requires that an appellate brief include "such discussion and citation of authorities as are deemed pertinent." This Court has repeatedly held that we will not consider the merits of an issue that is not properly raised and developed in a brief. *Am. Rock Mech., Inc. v. Workers' Comp. Appeal Bd. (Bik & Lehigh Concrete Tech.)*, 881 A.2d 54, 56 (Pa. Cmwlth. 2005). Arguments that are not fully developed in a brief will be deemed waived. *Beaver Valley Slag, Inc. v. Marchionda (Workers' Comp. Appeal Bd.)*, 247 A.3d 1212, 1221 (Pa. Cmwlth. 2021).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Mullen,                           :
                    Petitioner            :
                                          :
        v.                                :    No. 1083 C.D. 2021
                                          :
Northampton Township (Workers'            :
Compensation Appeal Board),               :
                    Respondent            :

# O R D E R

AND NOW, this 17th day of May, 2023, the August 4, 2021 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge