IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FirstEnergy Nuclear Operating    :
Company,    :
            Petitioner    :
   :
   :
     v.    : No. 1420 C.D. 2021
   :
Paul G. Koch, Jr. (Workers'    :
Compensation Appeal Board),    :
            Respondent    : Submitted: October 10, 2023

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED: November 16, 2023

FirstEnergy Nuclear Operating Company (Employer) petitions for review of the November 19, 2021 Order of the Workers' Compensation Appeal Board (Board), which affirmed a decision and order by a workers' compensation judge (WCJ) granting a Claim Petition filed by Paul G. Koch, Jr. (Claimant). Employer argues that the WCJ improperly rejected the testimony of Employer's medical witness that Claimant's hearing loss was not work-related, and that the testimony of Claimant's medical witness was insufficient to support Claimant's burden of proof. Upon review, we affirm.

## I. Background

Claimant filed a Claim Petition on January 29, 2019, pursuant to the Workers' Compensation Act,[1] in which he alleged that long-term workplace exposure to

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

hazardous noise led to a partial loss of his hearing. *See* Certified Record (C.R.), Item No. 2. From 1977 to 2016, Claimant was an employee of Duquesne Light Company; he worked for Employer from the time of its acquisition of Duquesne Light in 1999 until February 2, 2016. C.R., Item No. 5, Decision and Order of the WCJ, 4/2/2021 (WCJ Decision), Findings of Fact (F.F.) No. 1(b). Claimant alleges that he was continually exposed to hazardous noise during his 39-year tenure with the two companies, during which he held several positions. *Id.*, F.F., No. 1(j)-(o). In his Claim Petition, Claimant stated that he was seeking reimbursement for medical bills and counsel fees, as well as compensation for his hearing loss. O.R., Item No. 2.

In support of his Claim Petition, Claimant offered his own testimony at a hearing before the WCJ on June 20, 2019, as well as at a July 22, 2019 deposition. WCJ Decision, F.F. No. 1. Claimant also presented the August 5, 2020 deposition testimony of Dr. Michael Srodes, an otolaryngologist. *Id.*, F.F. No. 2. In its defense, Employer presented the October 29, 2020 deposition testimony of Dr. Douglas Chen, also an otolaryngologist, who performed an Independent Medical Examination (IME) of Claimant on February 27, 2020. *Id.*, F.F. No. 3.

### A. Claimant's Evidence

At the time of his testimony, Claimant was 61 years of age. O.R., Item No. 11, Hr'g Tr., 6/20/2019, at 7. Claimant recalled that he began working for Duquesne Light in 1977 as a "cable man," in which capacity he was responsible for cleaning out manholes with a hydraulic "super sucker" machine. *Id.* at 44. The machine sat over the manhole while Claimant, who described its noise as like "a lawnmower amplified 100 times," descended into the manhole with an attached hose. *Id.* at 44-45. Claimant moved to the Beaver Valley Power Station in 1983, where he became a "startup operator" responsible for "whatever [was] necessary to get the plant up

2

and running." *Id.* at 41. In that position, Claimant was again exposed to considerable noise as he was required to walk amid, and sometimes climb atop, the power station's machinery. *Id.* at 41-43. Although the power station provided earmuffs, Claimant recalled that they were impractical when workers such as he were required to crawl into tight spaces. *Id.* at 42. From 1985 to 2009, while working as an instrument control technician, Claimant was responsible for the calibration of pressure switches and other instruments necessary to control the temperature of power station equipment. *Id.* at 38-39. The noise of that equipment was, in Claimant's words, "like a train[,] amplified." *Id.* at 35. Claimant recalled that his hearing was periodically tested at work. *Id.* at 17-18.

From 2009 until his 2016 retirement, Claimant worked as a metrologist, and was responsible for the adjustment and repair of the power station's various measuring instruments. *Id.* at 25. Much of the work he performed in that capacity was done in a laboratory where the equipment emitted substantial, high-pitched noise. *Id.* at 32. Adding to the noise was the work of Claimant's colleagues, who performed welding, grinding, and the cutting of metal inside the laboratory. *Id.* at 31. Claimant was also brought into close contact during this period with the power station's steam turbines, the noise of which Claimant described as "deafening." *Id.* at 28-29.

Claimant first encountered issues with his hearing in 2002, when he noticed that it was difficult to understand his children and his then-wife while they were speaking. *Id.* at 11. The difficulties worsened in the following years and, in 2014, Claimant began using hearing aids. *Id.* at 13. Claimant acknowledged that he did not complain of his hearing issues to his primary care physician. *Id.* at 54. Neither Claimant's mother, nor his father, nor his seven brothers and sisters experienced

3

hearing loss. *Id.* at 8-9. Although Claimant acknowledged that he rode a motorcycle and engaged in recreational shooting, he always wore ear protection at the gun range, and maintained that the motorcycle was not particularly loud. *Id.* at 21-22. Claimant also hunted recreationally from 1973 until 2009, for which he did not wear ear protection, as he would only shoot a couple of times during each outing. *Id.* at 20.

Dr. Srodes, a board-certified otolaryngologist, testified that he examined Claimant on May 28, 2019, at the request of Claimant's counsel. C.R., Item No. 16, Srodes Dep., 8/5/2020, at 8. Before the physical examination began, Dr. Srodes reviewed Claimant's work history, family history, and personal history. *Id.* at 9. Dr. Srodes noted that Claimant occasionally used a chainsaw to chop wood and a riding lawnmower to cut grass, and that he hunted with a rifle occasionally. *Id.* at 11. Regarding Claimant's work history, Dr. Srodes noted that his only job before joining Duquesne Light did not involve noise exposure, and that Claimant never served in the military. *Id.* at 15. Dr. Srodes did not recall discussing Claimant's motorcycle use, but remarked during his testimony that he did not believe moderate motorcycle riding such as Claimant's would have caused hearing loss. *Id.* at 13. Claimant also told Dr. Srodes that he was hit in the head with a baseball bat in 1979, which broke his jaw, but Dr. Srodes did not believe that such an injury would have caused permanent hearing loss. *Id.* at 26.

During the physical examination, Dr. Srodes determined that there was no anatomical cause of hearing loss: Claimant had "normal looking ears, normal ear drums, [and] normal middle ear space." *Id.* at 20. Immediately following Dr. Srodes' examination, an audiologist in Dr. Srodes' practice administered a hearing test. *Id.* Using the formula developed by the American Medical Association (AMA)

4

to calculate hearing loss,[2] Dr. Srodes determined following the hearing test that Claimant suffered from 31.875% hearing loss in his left ear and 39.375% hearing loss in his right ear. *Id.* at 20-21. The overall binaural calculation, or figure representing Claimant's overall hearing loss, was 33.125%. *Id.* at 20. Reviewing the hearing test results, Dr. Srodes also determined Claimant's hearing to be least affected at the lowest and highest frequencies, and at its worst in the middle frequency range. *Id.* at 24-25. Those results were significant according to Dr. Srodes because, when hearing loss is age-related, "you will tend to see the loss in the highest frequencies first." *Id.* at 25.

Based on his examination of Claimant and examination of the relevant records, Dr. Srodes concluded within a reasonable degree of medical certainty that Claimant's hearing loss was work-related. *Id.* at 23-24. In spite of the 33.125% figure determined by the May 28, 2019 hearing test, Dr. Srodes opined that Claimant suffered a binaural hearing loss of 26.57%. *Id.* at 23. Dr. Srodes obtained that figure from a previous hearing test conducted in March 2019; its results, Dr. Srodes explained, were more reliable because the test was conducted closer to Claimant's 2016 retirement. *Id.*

To corroborate his conclusion, Dr. Srodes compared the results with those of Claimant's previous hearing tests. *Id.* at 21. The first was administered in 1977, months after Claimant began working for Duquesne Light, and indicated a normal hearing ability. *Id.* at 22. Beginning with a 1990 hearing test, however, Dr. Srodes noticed a weakening of Claimant's hearing in the middle frequency range, suggesting that the hearing loss pattern detected during the May 28, 2019 test was

---

[2] Under Section 306(c)(8)(i) of the Act, the percentage of hearing impairment "shall be calculated by using the binaural formula provided in the [AMA] Impairment Guides." 77 P.S. § 513(8)(i).

already occurring when Claimant was only 33. *Id.* at 25. Dr. Srodes found it significant that Claimant showed early signs of hearing loss at such a young age. *Id.* at 25.

### B. Employer's Evidence

Dr. Chen, also a board-certified otolaryngologist, examined Claimant on February 27, 2020. C.R., Item No. 32, Chen Dep., 10/29/2020. At the appointment, Claimant presented with tinnitus, or ringing, in both ears as well as hearing difficulties that had afflicted him since 2002. *Id.* at 6. Dr. Chen reviewed Claimant's history before the examination, including the records from Dr. Srodes' examination. *Id.* at 5. Like Dr. Srodes, Dr. Chen observed that Claimant had anatomically normal ears, with no visible cause of hearing loss. *See id.* at 11. A hearing test that followed the examination determined that Claimant suffered from a hearing impairment of 41.25% in the right ear and 33.75% in the left, resulting in a total binaural impairment of 35%.[3] *Id.* at 12. Dr. Chen acknowledged that the results of the hearing test were not significantly different from the results of the one conducted at Dr. Srodes' office nearly one year before. *Id.* at 16.

Although in full agreement with Dr. Srodes on the extent of Claimant's hearing impairment, Dr. Chen concluded within a reasonable degree of medical certainty that the impairment was age-related, not work-related. *Id.* at 20. Dr. Chen explained that occupational noise-induced hearing impairment is "most substantial during the first 10 to 15 years of exposure, and thereafter slows." *Id.* at 18. If the progress of a patient's hearing loss does not follow that pattern, Dr. Chen explained,

---

[3] In his testimony, Dr. Chen emphasized that the hearing test was conducted to determine Claimant's hearing *impairment* rather than hearing loss. *Id.* at 17. Dr. Chen explained that, while hearing loss is a direct reflection of the data on an audiogram, the formula given in the AMA Impairment Guides is specifically designed to calculate hearing impairment. *Id.*

then "other factors, including aging, need to be considered." *Id.* Dr. Chen observed that Claimant's binaural hearing impairment remained at zero percent until 2006. *Id.* As recently as 2011, according to Dr. Chen, an audiogram reflected a total binaural hearing impairment of just 2.188%. *Id.* at 19. Dr. Chen concluded after his review of Claimant's records that his hearing impairment did not begin to accelerate substantially until 2014. *Id.* The connection between Claimant's exposure to occupational noise and his hearing impairment was even more improbable, in Dr. Chen's view, in light of the fact that Claimant's hearing has worsened since his retirement. *Id.* at 22. Dr. Chen maintained that occupational noise exposure "produced hearing loss at the time of exposure," not hearing loss delayed by decades. *Id.* at 22.

### C. The WCJ's Decision

In an April 2, 2021 decision, the WCJ granted the Claim Petition. WCJ Decision, Conclusion of Law (C.L.) No. 2. Regarding the medical testimony, the WCJ credited Dr. Srodes' opinions over Dr. Chen's. *Id.*, F.F. No. 4(e). The WCJ explained that Dr. Srodes' conclusion regarding the work-relatedness of Claimant's hearing loss was well supported by Claimant's "medical history, his family history, his physical exam, and the audiometric testing." *Id.*, F.F. No. 4(d). Dr. Chen's testimony that Claimant suffered 0% hearing impairment due to work exposure was not credible, according to the WCJ, in light of Claimant's employment for many years in hazardously noisy environments. *Id.*, F.F. No. 4(d)-(e). The WCJ thus concluded that Claimant suffered a binaural hearing loss of 26.57% as the result of that exposure, and awarded Claimant approximately 69 weeks of benefits. *Id.*,

7

Conclusion of Law (C.L.) No. 2. Employer appealed to the Board, which affirmed. *See* C.R., Item No. 8. This appeal followed.[4]

## II. Issues

Employer argues that the Board erred in affirming the WCJ, because Employer's medical expert gave "uncontradicted" testimony that Claimant's hearing loss occurred too late to have been work-related. Employer's Br. at 11. In the alternative, Employer argues that even if occupational noise exposure was a cause of Claimant's hearing loss, the testimony of his medical expert was insufficient to establish the degree to which occupational noise was responsible.

## III. Discussion

Section 306(c)(8)(i) of the Act provides that benefits may be awarded to an employee who has sustained a "permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise." 77 P.S. § 513(8)(i). A claimant seeking such benefits carries the "burden of establishing he or she suffered permanent hearing loss of 10% or greater," and that the hearing loss "is medically established to be work-related and caused by the long-term exposure to hazardous occupational noise." *Elliott v. Workers' Comp. Appeal Bd. (Shipley)*, 795 A.2d 480, 486 (Pa. Cmwlth. 2002). The employer may assert as an affirmative defense that the exposure was not long-term, or that the noise was "not hazardous." *Meadvill Forging Co. v. Workers' Comp. Appeal Bd. (Artman)*, 747 A.2d 958, 961 (Pa. Cmwlth. 2000). Whether a claimant has been exposed to hazardous occupational noise is a question of fact for

---

[4] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

the WCJ. *Helvetia Coal Co. v. Workers' Comp. Appeal Bd. (Learn)*, 913 A.2d 326, 329 (Pa. Cmwlth. 2006).

The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). In executing her role as factfinder, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Id.* Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the proper inquiry is whether substantial evidence exists to support the findings actually made. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

Instantly, Employer does not offer evidence that the noise to which Claimant was exposed was not hazardous, or that the exposure was not long-term. Rather, Employer's objection is that its medical expert, Dr. Chen, gave "dispositive testimony" on the question of whether the occupational noise was the cause of Claimant's hearing issues. Employer's Br. at 10. Specifically, Dr. Chen explained that binaural hearing impairment caused by occupational noise exposure manifests itself within 10 to 15 years of the beginning of that exposure, and that Claimant's hearing issues accelerated "outside of that window." *Id.* at 13. Employer maintains that Dr. Chen's conclusions were "uncontradicted by Dr. Srodes." *Id.* at 10. Accordingly, Employer asks that this case be remanded so that the WCJ may "properly consider the testimony of Dr. Chen." *Id.* at 18.

9

Employer's arguments are unavailing.  First, we note that it is not Employer's role to determine whose testimony is dispositive; as we explain above, that function is performed by the WCJ in her capacity as the factfinder.  Furthermore, Employer's contention that Dr. Chen's testimony was uncontradicted is simply untrue.  Dr. Srodes' testimony that Claimant's hearing impairment was caused by his exposure to occupational noise directly controverts Dr. Chen's conclusion that the impairment was age-related.  We do not dispute that Dr. Chen offered a plausible theory as to the causes of Claimant's hearing impairment; however, the relevant inquiry is whether evidence exists to support the findings that the WCJ actually made.[5]  As the WCJ's reasons for crediting Dr. Srodes' testimony over Dr. Chen's are supported by the evidence, we will not disturb her conclusions.

Finally, Employer argues that, even if it were agreed upon that Claimant's hearing loss was work-related, Dr. Srodes' testimony is insufficient to establish the degree to which occupational noise was the cause of that hearing loss.  Employer explains that Claimant's last exposure to occupational noise occurred on February 2, 2016; meanwhile, the hearing test from which Dr. Srodes derived his conclusion that Claimant suffered a 26.57% hearing loss was administered in March 2019, more than three years later.  Thus, Employer argues, "it is unknown what Claimant's hearing impairment was at the time of his last noise exposure even if it is assumed that the hearing impairment at that time was work-related."  *Id.* at 16.

---

[5] Employer also maintains that the WCJ's decision "reflected a complete lack of understanding of the difference between hearing loss and binaural hearing impairment." Employer's Br. at 10.  This assertion is an apparent reference to Dr. Chen's testimony that the AMA Impairment Guides determine hearing impairment, whereas hearing loss is directly represented on an audiogram.  *See* Chen Dep., 10/29/2020, at 17.  We do not dispute that the distinction between hearing loss and hearing impairment is medically significant.  However, we disagree that it has any impact on the outcome of this case, given that both doctors employed the AMA Impairment Guides in reaching their conclusions.  *See* Srodes Dep., 8/5/2020, at 20-21.

Employer's contention, for which it cites no relevant legal authority, is unpersuasive. Neither Section 306(c)(viii) nor any other Act provision requires that a hearing test be administered on or before Claimant's last day of employment. In fact, Section 306(c)(8)(viii) clearly states that the claim "shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought." 77 P.S. 513(8)(viii). This Court has stated that Section 306(c)(8)'s three-year limit is "the *only* deadline imposed on those seeking compensation for a work-related hearing loss." *City of Phila. v. Workers' Comp. Appeal Bd. (Seaman)*, 8 A.3d 1004, 1009 (Pa. Cmwlth. 2010) (emphasis added). In this case, the Claim Petition was filed on January 29, 2019, less than three years after Claimant's last day of work. The assertion that Claimant carried a burden to prove the precise extent of his hearing impairment on or before his last day of work is without merit.

### IV. Conclusion

This Court's role in a workers' compensation case is not to reweigh the evidence or the credibility of the witnesses, but simply to determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 33 n.5 (Pa. Cmwlth. 2015). The WCJ's findings in this case are supported by substantial evidence. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FirstEnergy Nuclear Operating : 
Company, : 
                Petitioner : 
         : 
      v. : No. 1420 C.D. 2021
         : 
Paul G. Koch, Jr. (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

# **O R D E R**

AND NOW, this 16th day of November, 2023, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated November 19, 2021, is AFFIRMED.

_____
ELLEN CEISLER, Judge